Robert CHAMBERS, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 49S00–9905–CR–306.

Supreme Court of Indiana.

Sept. 6, 2000.

J. Richard Kiefer, James J. Bell, Indianapolis, Indiana, Attorneys for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Thomas D. Perkins, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

Robert Chambers was convicted of the murder of John Christopher Madden and sentenced to sixty-five years imprisonment. On appeal, Chambers presents one issue for review: whether he is entitled to a new trial based on the trial court's refusal to give a proposed instruction regarding the impeachment of a witness by prior inconsistent statements. We affirm the trial court.

**Factual and Procedural Background**

In the early morning hours of April 25, 1998, after consuming a large number of beers and shots of whiskey at two India-

napolis bars, Chambers and a friend, Eric Cruz, were invited to Madden's home where the three consumed more beer. Ultimately, Cruz, who later testified that he was "pretty smashed," passed out in the dining room. At that point, Madden invited Chambers to join him in his hot tub. Both men stripped to their underwear and soaked for some period of time. Madden and Chambers went to the basement to put their wet underwear in the dryer. Chambers then put on his pants without underwear and Madden donned a long t-shirt. Chambers and Madden were still in the basement when a bullet from Chambers' Glock nine millimeter handgun penetrated Madden's skull and killed him.

After the shooting, Chambers and Cruz left Madden's house without reporting the incident. The next day, realizing that Chambers' wallet was missing, the two men returned to Madden's house and retrieved the wallet from the basement. They also took two beer bottles and an ashtray. That day or soon thereafter, Chambers and Cruz disposed of the bottles and ashtray, along with the gun that killed Madden.

The police discovered Madden's body several days after his death and quickly determined that Cruz and Chambers were the last two to see him alive. Both men were interviewed by the police and each initially gave a statement that he later admitted contained inaccuracies and outright lies. Both Chambers and Cruz were arrested and charged with one count of murder and one count of burglary as a Class B felony. In exchange for his testimony at Chambers' trial, Cruz pleaded guilty to burglary and assisting a criminal with the State's recommendation for an executed sentence of no more than twelve years.

Both Chambers and Cruz testified at trial. Although their versions agreed on some points, they recounted very different stories as to the substance of a conversation that occurred immediately after Madden's death. Most importantly, Chambers claimed that he immediately told Cruz that the gun went off accidentally and that he was not sure whether he or Madden was holding the gun at the time it discharged. In contrast, Cruz testified that Chambers told him that Madden had made unwanted sexual advances and that after repeated warnings, Chambers "lost it" and shot Madden. The central issue at trial was whether Chambers "knowingly" killed Madden. Because the only witness to the shooting was Chambers himself, the State's case regarding Chambers' *mens rea* was built on the testimony of Cruz.

At trial, Cruz's testimony was impeached by earlier statements that he had made under oath as well as statements that he had made to police. For example, in the first two statements Cruz made to the police, he denied having seen Madden in the three or four weeks prior to his death. In his third statement, Cruz finally admitted that he and Chambers were involved in Madden's death, but omitted the visit to Madden's home the next day and the fact that Cruz had searched the dresser drawers in Madden's bedroom. Finally, Brian Fouts was an acquaintance of both Chambers and Cruz and testified to a conversation with the men while all three were incarcerated in the Marion County Jail. On cross-examination, Cruz was asked if he had ever spoken to the prosecutor about Fouts' testimony. Cruz replied that the prosecutor asked him if he knew Fouts, but Cruz denied discussing Fouts' deposition or any facts related to his testimony. In fact, just three days before Cruz took the stand, the prosecutor and Cruz had spoken by telephone and discussed Fouts and his statement. Commendably, the prosecutor recalled Cruz to the stand to correct the record on that point. Cruz acknowledged that he had not told the truth about his recent conversation with the prosecutor but blamed his lapse of memory on cold medication.

All of these inconsistencies in Cruz's evolving account were presented to the

jury, which found Chambers guilty of murder but not guilty of burglary.

## Withdrawn Jury Instruction

■ The trial court considered an instruction that would have informed the jury that it had the right to reject the uncorroborated testimony of witnesses whose credibility had been impeached by prior inconsistent statements.[1] The proposed instruction read:

The credibility of any witness may be impeached by proof that he has made statements out of court contrary to and inconsistent with what he testifies to in the trial concerning matters material and relevant to the issues joined. And in this case, if any witness has been thus impeached about material matters relevant to the issues in the case, then you have a right to reject all of his testimony except insofar as he has been corroborated by other credible evidence in this case.

If you should believe from the testimony in this case that any witness or witnesses have willfully and intentionally testified falsely to any material fact in the case, intending by such false testimony to mislead and deceive you as to the truth in this case, you may under such belief, disregard the whole or any part of the testimony of such witness or witnesses, if in your opinion, you are justified, under your belief, in so doing.

The State objected to the instruction, opining: "I think that's an incorrect statement of law." The trial court expressed concern that the instruction was no longer valid after this Court's 1991 decision to overrule the so-called "*Patterson* Rule," which permitted the use of prior statements as substantive evidence. *See Patterson v. State*, 263 Ind. 55, 57–58, 324 N.E.2d 482, 484–85 (1975), *overruled by Modesitt v. State*, 578 N.E.2d 649, 654

(Ind.1991). The trial court stated it was uncomfortable with the instruction because it was not a "post-*Modesitt*" pattern instruction, and the court was unsure whether the instruction reflected current law. *Modesitt* anticipated the adoption of Indiana Evidence Rule 801(d)(1) and precluded the use of prior statements of a witness as substantive evidence except under the circumstances set forth in the Rule. That holding did not affect the right of a jury to disregard the uncorroborated testimony of a witness impeached by prior inconsistent statements and had no impact on the validity of the proposed jury instruction.

■ Although the trial court's reason for concern may be incorrect, its decision not to give the instruction was not an abuse of discretion if the instructions, considered as a whole and in reference to each other, did not mislead the jury as to the applicable law. *Young v. State*, 696 N.E.2d 386, 389–90 (Ind.1998). That is the case here. In reviewing a trial court's decision to give or refuse tendered jury instructions, this Court considers: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions that are given. *Wooley v. State*, 716 N.E.2d 919, 926 (Ind.1999).

Whether the proposed instruction is desirable or not, it is a correct statement of the law. *See Norton v. State*, 273 Ind. 635, 664–65, 408 N.E.2d 514, 533 (1980); *Liechty v. State*, 202 Ind. 66, 71, 169 N.E. 466, 468 (1930). Also, because three key witnesses, including Cruz and Chambers, were impeached during trial by prior inconsistent statements, the giving of the instruction was plainly supported by the evidence.

---

1. The origin of the proposed instruction is unclear. Chambers' brief states that the trial court proposed the instruction but the State's brief claims that the defense tendered it. The record is somewhat murky on this point.

However, for purposes of this decision, it is irrelevant who initiated the discussion. The prosecutor objected to the instruction and the defense argued for it and objected to the failure to give it.

The issue then turns on whether the substance of the tendered instruction was covered by other instructions that were given and whether the instructions as a whole were adequate. The trial court gave the jury the following preliminary and final instruction with regard to the credibility of witnesses.

.You are the exclusive judges of the evidence, the credibility of the witnesses, and of the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his or her ability and opportunity to observe; the manner and conduct of the witness while testifying; any interest, bias, or prejudice the witness may have; any relationship with the other witnesses or interested parties; and the reasonableness of the testimony of the witness considered in the light of all the evidence in this case. You should attempt to fit the evidence to the presumption that the Defendant is innocent and the theory that every witness is telling the truth. You should not disregard the testimony of any witness without a reason and without careful consideration. If you find conflicting testimony, you must determine which of the witnesses you will believe and which of them you will disbelieve.

In weighing the testimony to determine what or whom you will believe, you should use your own knowledge, experience and common sense gained from day to day living. The number of witnesses who testify to a particular fact, or the quantity of evidence on a particular point, need not control your determination of the truth. You should give the greatest weight to that evidence which convinces you most strongly of its truthfulness.

Chambers argues that this instruction was not sufficient to inform the jury that it had the expansive right to disregard the uncorroborated testimony of a witness who had been impeached by prior inconsistent statements.

Although it did not do so in the explicit terms of the proposed instruction, the foregoing instruction told the jury that it was the exclusive judge of witness credibility, and could disregard the testimony of a witness if it had reason to do so. This is sufficient discussion of the subject. It is certainly within the jury's "knowledge, experience, and common sense" to choose to believe or disbelieve a witness who gave inconsistent statements and who may have therefore testified untruthfully. Common experience, shared by us all, includes listening to a stranger and concluding that nothing he or she has to say is believable. The trial court must use some judgment in determining the length, detail, and complexity of instructions. The trial court did not abuse its discretion by refusing to dwell on the point raised by the proposed instruction.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and RUCKER, JJ., concur.