Thomas SMITH, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A05–0103–CR–127.

Court of Appeals of Indiana.

Oct. 22, 2002.

Teresa D. Harper, Bloomington, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Cecelia K. Hemphill, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

After a jury trial, Thomas Smith was convicted of murder.[1] He now appeals, raising the following restated issues for review:

I. Whether the trial court erred in rejecting Smith's tendered jury instruction that a person actively engaged in the commission of a crime may assert the defense of self-defense if the criminal activity did not produce the confrontation in which force was used.

II. Whether the trial court erred in rejecting Smith's tendered jury instruction on credibility.

III. Whether the trial court properly excluded evidence of a gun located in the victim's closet.

We reverse.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to the verdict are that on February 6, 2000, Smith tele-

---

1. *See* IC 35–42–1–1.

phoned Ryan Chambers and indicated that he was going to stop by Chambers' home the following morning to purchase marijuana and pay part of a debt arising from a drug transaction. When Smith and Roger Williams arrived at Chambers' home on the morning of February 7, 2000, Smith noticed a small bag of marijuana and a handgun on a coffee table. After using the restroom, Smith noticed that the handgun was no longer on the coffee table.

As Smith and Williams inspected the marijuana, Chambers, with the gun in his hand at his side, asked Smith for the money that Smith owed him. Williams then pulled his handgun out and held it at his side. Smith grabbed at Chambers' gun and knocked it to the floor. Williams picked up Chambers' gun as a struggle ensued between Chambers and Smith. Chambers retrieved two daggers from an entertainment center where they were displayed. Smith grabbed Chambers from behind by the wrists. Williams left and returned with two men who were waiting for Smith and Williams in a car outside. One of the men restrained Chambers with his forearm, and the men bludgeoned Chambers with the butt of Williams' gun and the handles of the daggers, fracturing his skull in multiple places. Smith also bit Chambers on the back. Chambers died as a result of a twelve-inch deep stab wound stretching from under his right arm, through his ribs and kidney, and around to his back. At some point, Williams and the two others left. Smith stayed in the home briefly after the others left, retrieved the bloody daggers, then left. Chambers' wallet and handgun were never recovered.

On February 15, 2000, the State charged Smith with one count of murder. The State later amended the charging information to include one count of felony murder with the underlying felony of robbery. On January 31, 2001, a jury found Smith guilty as charged. On March 3, 2001, the trial court merged the felony murder conviction into the murder conviction and sentenced Smith to fifty-five years. Smith now appeals.

## DISCUSSION AND DECISION

### I. Jury Instructions

Smith first argues that a number of instructions that he tendered to the trial court should have been given. "Jury instructions are solely within the discretion of the trial court; we will reverse only if the court abuses that discretion." *Young v. State*, 696 N.E.2d 386, 389 (Ind.1998). An abuse of discretion occurs if the instructions, considered as a whole and in reference to each other, mislead the jury as to the applicable law. *Id.* at 389–90. In reviewing a trial court's decision to give or refuse tendered jury instructions, we consider: "(1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions that are given." *Chambers v. State*, 734 N.E.2d 578, 580 (Ind.2000).

### A. Self-defense

At trial, Smith argued that he acted in self-defense. Subsection (d)(1) of IC 35–41–3–2 provides that a person is not justified in using force to defend himself if "he is committing, or is escaping after the commission of, a crime[.]" Smith argues that the trial court erred in refusing his tendered instructions which explained that this limitation on self-defense only applies "to those cases in which there is a nexus between the criminal offense charged and the criminal offense underway when the

charged offense was committed." *Appellant's Brief* at 5.

Smith's tendered instructions read:

"INSTRUCTION NUMBER 17

A person who was actively engaged in the perpetration of a crime may assert self defense if the criminal activity he was engaged in did not produce the confrontation wherein force was employed.

*Harvey v. State*, 652 N.E.2d 876 (Ind. App.1995)[.]

INSTRUCTION NUMBER 18

Possession of marijuana or dealing in marijuana by an accused standing alone is insufficient to constitute the "commission of a crime" as used within the definition of self-defense sufficient to prohibit assertion of self-defense by an accused.

*Harvey v. State*, 652 N.E.2d 876 (Ind. App.1995)[.]"

Appellant's Appendix at 184–85.

The trial court's instruction regarding Smith's claim of self-defense mirrored IC 35–41–3–2 in part and provided:

"A person is justified in using reasonable force against another person to protect himself or a third party from what he reasonably believes to be the imminent use of unlawful force. However, a person is justified in using deadly force only if he reasonably thought that that force is necessary to prevent serious bodily injury to himself or a third person or the commission of a forcible felony. No person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting himself or his family by reasonable means necessary.

A person is not justified in using force if:

a. He is committing, or is escaping after the commission of a crime;

b. He provokes unlawful action by another person, with intent to cause bodily injury to the other person; or

c. He has entered into combat with another person or is the initial aggressor, unless he withdraws from the encounter and communicates to the other person his intent to do so, and the other person nevertheless continues or threatens to continue unlawful action."

*Id.* at 243. Smith maintains that by giving this instruction without his tendered instruction the trial court effectively eliminated his self-defense claim. Moreover, he argues, the instruction as given resulted in an incorrect statement of the law.

In *Harvey v. State*, 652 N.E.2d 876, 876 (Ind.Ct.App.1995), *trans. denied* (1996), the defendant, who was being tried for murder, admitted that he did not have a license to carry the murder weapon. The trial court instructed the jury as to the statutory definition of self-defense. In addition, it instructed the jury that "[a] person who is not in his home or fixed place of business and is carrying a handgun without a license cannot by law claim the protection of the law of self defense." *Id.* The defendant argued that the instructions "conclusively denied him his only defense to the charge." *Id.*

We concluded that the first instruction properly left for the jury the determination of whether the shooting was justified. *Id.* at 877. We reversed the defendant's conviction, however, because the latter instruction "ignored any nexus between the crime and the shooting." *Id.* We explained that the intent of the statute "is to preclude the defense where it is sought by one who was actively engaged in the perpetration of a crime, and that criminal activity produced the confrontation wherein the force was employed." *Id.*

Our supreme court considered a similar issue in *Mayes v. State*, 744 N.E.2d 390 (Ind.2001). In *Mayes*, the defendant possessed an unlicensed handgun which he used to shoot his girlfriend. *Id.* at 393. He sought an instruction on self-defense at trial. Over his objection, the trial court gave an instruction on the statutory definition of and the exceptions to self-defense. *Id.* The defendant claimed that the possession of an unlicensed handgun was not the type of offense that should necessarily negate a claim of self-defense. *Id.* Our supreme court agreed, concluding:

> "that because a defendant is committing a crime at the time he is allegedly defending himself is not sufficient standing alone to deprive the defendant of the defense of self-defense. Rather, there must be an immediate causal connection between the crime and the confrontation. Stated differently, the evidence must show that but for the defendant committing a crime, the confrontation resulting in injury to the victim would not have occurred."

*Id.* at 394.

The court further commented that the essential question was whether there was evidence presented to support giving the instruction. "More specifically, was there evidence demonstrating that but for Mayes' possession of an unlicensed handgun, the confrontation resulting in [the victim's] shooting death would not have occurred?" *Id.* The *Mayes* court held that the existence of an immediate causal connection is a question of fact and concluded that in that case the trial court's instruction on self-defense was not erroneous. *Id.* at 394–95.

Based on *Harvey* and *Mayes*, we conclude that Smith's tendered instructions are a correct statement of the law. A defendant who is committing a crime at the time may not be precluded from asserting the defense of self-defense if there is no immediate causal connection between his or her crime and the confrontation which occasioned the use of force. The trial court's instructions on self-defense did not include this nuance but rather included a blanket statement that one committing a crime may not assert self-defense. Thus, the substance of Smith's proffered instructions was not included in other instructions.

In so holding, we recognize that the *Mayes* court did not find reversible error for failing to give an instruction that explained that not all criminal offenses bar the use of self-defense. However, in that case, unlike here, there is no indication that the defendant tendered an instruction explaining this point of law. Here, Smith tendered such an instruction, and the trial court should have given it if supported by the evidence.

Accordingly, we next consider whether the evidence supported giving such an instruction. Smith's videotaped statement to police was admitted at trial. In it, he stated that he went to Chambers' home to purchase marijuana and repay part of a drug debt. As he and Williams were examining the marijuana, Chambers confronted him with a gun regarding the money Smith owed him. The pair scuffled, and Smith disarmed Chambers. Chambers re-armed himself with a pair of daggers, and Smith grabbed him by the wrists from behind. According to Smith, one or more of the other men then punched Chambers in the head with their hands two to three times before leaving Smith and Chambers to their struggle. Smith explained that he lifted Chambers up and slammed him on the floor because he was unable to disarm him. As Chambers hit the floor, Smith heard him make a sound and saw Chambers lying still on the floor with a dagger in each hand. He took

the daggers and left. While there was evidence contradicting Smith's account, a defendant is entitled to an instruction on any defense which has some foundation in the evidence, even when that evidence is weak or inconsistent. *Davis v. State*, 691 N.E.2d 1285, 1289 (Ind.Ct.App.1998). We find that the evidence supported the giving of Smith's instructions, and the trial court erred in refusing them.

 Nonetheless, an error in failing to give an instruction to the jury does not necessarily warrant reversal. *Bragg v. State*, 695 N.E.2d 179, 180 (Ind.Ct.App. 1998). In determining whether the refusal warrants reversal, we must assess whether the defendant was prejudiced by the court's failure to give the instruction. *Id.* Here, the jury saw Smith's statement in which he admitted to going to Chambers' home to purchase marijuana and becoming engaged in a struggle with Chambers that left Chambers lying still on the floor. The instructions given, taken literally, deprived Smith of his defense. The jury was not informed that it was required to determine whether Smith's contemporaneous criminal act was immediately causally related to the confrontation with Chambers. Under these facts, we cannot find that the trial court's refusal to give Smith's tendered instructions was harmless. Accordingly, we must reverse Smith's conviction. Although we find this issue dispositive, we address Smith's remaining issues because they are likely to recur on retrial.

### B. Witnesses Credibility

Smith also argues that the trial court erred in rejecting his tendered instructions on determining the credibility of witnesses. He claims that Detective Douglas Scheffel's testimony was impeached on cross-examination and that the trial court erred when it rejected his instructions and instead gave an instruction similar to the one in *Chambers v. State*, 734 N.E.2d at 580. In *Chambers*, the defendant argued that the standard instruction did not inform the jury of its right to disregard the uncorroborated testimony of a witness whose testimony had been impeached. *Id.* at 581. Our supreme court concluded:

"Although it did not do so in the explicit terms of the proposed instruction, the foregoing instruction told the jury that it was the exclusive judge of witness credibility, and could disregard the testimony of a witness if it had reason to do so. This is sufficient discussion of the subject. It is certainly within the jury's 'knowledge, experience, and common sense' to choose to believe or disbelieve a witness who gave inconsistent statements and who may have therefore testified untruthfully. Common experience, shared by us all, includes listening to a stranger and concluding that nothing he or she has to say is believable. The trial court must use some judgment in determining the length, detail, and complexity of instructions. The trial court did not abuse its discretion by refusing to dwell on the point raised by the proposed instruction."

*Id.*

 Here, the trial court's instruction informed the jury it was the exclusive judge of witness credibility and that with careful consideration it could disregard the testimony of any witness. The instruction also informed the jury that "[i]n weighing the testimony to determine what or whom you will believe, you should use your own knowledge, experience and common sense gained from day to day living." *Appellant's Appendix* at 228. Like the instruction in *Chambers*, this instruction sufficiently informed the jury of its obligation to judge the credibility of the witnesses and permitted it to disregard testimony if it found good reason to do so. Because the

substance of Smith's tendered instructions was adequately covered by the trial court's other instructions, the trial court did not abuse its discretion in refusing Smith's instructions.[2]

## II. Admission of Evidence

Smith contends that the trial court erred in granting the State's motion in limine and excluding evidence relating to a gun found in a closet in Chambers' bedroom. He argues that the fact that a gun was found in Chambers' closet after Smith left the home contradicts the State's theory that Chambers' death occurred during the commission of a robbery and supports his theory that he acted in self-defense.

"The admission of evidence is within the sound discretion of the trial court, and the decision whether to admit evidence will not be reversed absent a showing of manifest abuse of the trial court's discretion resulting in the denial of a fair trial." *Simmons v. State*, 760 N.E.2d 1154, 1158 (Ind.Ct.App.2002). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ind. Evidence Rule 401. "Generally speaking, relevant evidence is admissible, and irrelevant evidence is inadmissible." *Majors v. State*, 748 N.E.2d 365, 368 (Ind. 2001); *see also* Evid. R. 402.

There is no indication that the struggle took place in the bedroom where the gun was found, that the gun was used during the struggle, or that Smith was even aware that there was a gun in Chambers' closet. Further, many items of value

remained after Smith left the apartment; he does not argue that evidence regarding these items is also relevant. The State argued that Smith robbed Chambers, and it produced evidence that Chambers' handgun and wallet were missing after Smith left. Smith has not shown that the exclusion of evidence related to another item of value located in a different area of the house was an abuse of discretion.

Reversed and remanded.

MATHIAS, J., concurs with separate opinion.

BARNES, J., dissents with separate opinion.

MATHIAS, Judge, concurring.

I write to concur only to express my personal distaste and regret that this gruesome case must be retried because of Smith's claim of self-defense. However, to hold otherwise would also preclude a claim of self-defense in much less reprehensible and much more common circumstances, such as a confrontation between motor vehicle operators after a collision stemming from criminal recklessness. Depriving those accused of a crime of a claim of self-defense reduces our society to an unacceptable "Wild West" mentality.

For all of these reasons, I regretfully concur.

BARNES, Judge, dissenting.

I respectfully dissent because I do not agree with majority's conclusion that Smith's proposed instruction number eighteen correctly states the law or that Smith's proposed instruction seventeen is supported by the evidence. Instead, I

---

**2.** Smith concedes that *Chambers* "weighs against him," but asks us to reconsider the issue. *Appellant's Brief* at 14. We cannot, given that we are bound to follow the precedent of our supreme court. *See Hatchett v. State*, 740 N.E.2d 920, 926 n. 13 (Ind.Ct.App. 2000), *trans. denied* (2001).

would conclude the trial court did not abuse its discretion in refusing to tender Smith's proposed instructions and would affirm his murder conviction.

Again, Smith's instruction eighteen provides:

### INSTRUCTION NUMBER 18

Possession of marijuana or dealing in marijuana by an accused standing alone is insufficient to constitute the "commission of a crime" as used within the definition of self-defense sufficient to prohibit assertion of self-defense by an accused.

*Harvey v. State*, 652 N.E.2d 876 (Ind. App.1995)[.]

Appellants' App. p. 184. In determining whether this instruction correctly states the law, I believe Smith's reliance on *Harvey v. State*, 652 N.E.2d 876, 876 (Ind.Ct. App.1995) and *Mayes v. State*, 744 N.E.2d 390 (Ind.2001), is misplaced.

Initially, I note that the trial court here did not give an instruction similar to the erroneously tendered instruction in *Harvey*, which on its face precluded the jury from considering the defendant's claim of self-defense. Also, despite Smith's citation to *Harvey* in his proposed instruction, I do not believe that *Harvey* supports the contention that the nexus between possession of or dealing in marijuana and a death is always insufficient, permitting a defendant to claim self-defense as a matter of law. I can imagine situations in which possession of or dealing in marijuana would not provide a sufficient nexus to preclude a claim of self-defense, such as where one is simply carrying a marijuana cigarette and is attacked unexpectedly. There are countless scenarios, however, including the facts of this case, in which possession of or dealing in marijuana would provide a sufficient nexus to preclude a claim of self-defense.

Furthermore, I do not read our supreme court's recent opinion in *Mayes v. State*, 744 N.E.2d 390 (Ind.2001), to support Smith's contention that possession of marijuana or dealing in marijuana is insufficient to constitute the "commission of a crime," which would prohibit a defendant from claiming self defense under Indiana Code Section 35–41–3–2. *Mayes* did not involve the crimes of possession of marijuana or dealing in marijuana, but instead addressed the possession of an unlicensed handgun used in a shooting. *Id.* at 393. Further, *Mayes* does not address which offenses constitute the "commission of a crime" sufficient to preclude a claim of self-defense.

In my opinion, neither *Harvey* nor *Mayes* supports Smith's contention in his proposed instruction eighteen that possession of marijuana and dealing in marijuana do not constitute the "commission of a crime" as a matter of law, which would preclude a claim of self-defense. I, therefore, do not agree with the majority's conclusion that Smith's proposed instruction correctly states the law.

I also believe that Smith's proposed instruction seventeen is not supported by the evidence. To reiterate, Smith's proposed instruction seventeen provides:

### INSTRUCTION NUMBER 17

A person who is actively engaged in the perpetration of a crime may assert self defense if the criminal activity he was engaged in did not produce the confrontation wherein force was employed.

*Harvey v. State*, 652 N.E.2d 876 (Ind. App.1995)[.]

Appellant's App. p. 185. Although this instruction may have correctly stated the law, I cannot reconcile the majority's conclusion with our supreme court's holding in *Mayes*, in which our supreme court acknowledged that there must be an immedi-

ate causal connection between the crime and the confrontation. *Mayes*, 744 N.E.2d at 394. Our supreme court concluded, however, that the trial court's tendered instruction on self-defense, which did *not* include language concerning an immediate causal connection, was not erroneous. *Id.* at 394–95. The *Mayes* court observed, "[t]he question here is whether there was evidence presented to support giving the instruction. More specifically, was there evidence demonstrating that *but for* Mayes' possession of an unlicensed handgun, the confrontation resulting in [the victim's] shooting death would not have occurred?" *Id.* at 394 (emphasis added).

Here, the uncontroverted evidence indicates that Smith went to Chambers' apartment to settle a disputed drug-related debt and to purchase additional marijuana. The evidence also indicates that Smith and Chambers began arguing over Smith's drug-related debt. As in *Mayes,* the violent encounter that resulted in Chambers' death arose directly from Smith's criminal activity. *See id.* at 394. Moreover, because the deadly argument between Smith and Chambers arose directly out of Smith's active pursuit of additional marijuana, the nexus is even more apparent than that in *Mayes,* which involved the passive possession of an unlicensed handgun used in a shooting. *See id.*

Because the evidence demonstrates that but for Smith's disputed drug debt and attempt to purchase additional marijuana, the confrontation resulting in Chambers' death would not have occurred, I believe that we are required to follow the precedent set in *Mayes* and affirm Smith's conviction. *See Jackson v. State,* 657 N.E.2d 131, 135 (Ind.Ct.App.1995) (recognizing that we are bound by precedent established by our supreme court.)

Additionally, in its analysis of whether Smith's proposed instructions are supported by the evidence, the majority observes that Smith is entitled to an instruction on any defense that has some foundation in the evidence. Although I agree with this observation and concede that Smith's claim of self-defense does have some foundation in the evidence, I must point out that Smith was not denied an instruction on his claim of self-defense. In fact, the trial court tendered a self-defense instruction that mirrored the language of Indiana Code Section 35–41–3–2 and was similar to the instruction approved by our supreme court in *Mayes.*

Smith's proposed instruction seventeen suggests there was evidence that the criminal activity in which he was engaged did not produce the confrontation wherein force was employed. On the contrary, the evidence clearly indicates that Smith went to Chambers' apartment to settle the disputed drug-related debt and to purchase additional marijuana. This is not a case where Smith merely possessed marijuana and was forced to defend himself due to Chambers' unrelated aggressive behavior. Instead, the criminal activity in which Smith was engaged most certainly produced the confrontation resulting in Chambers' death. In my opinion, there is no evidence to support Smith's instruction seventeen. Additionally, I believe it would contravene public policy to hold that one who kills another during a "drug deal gone bad" is entitled to such an instruction.

Because I do not believe that Smith's proposed instruction eighteen correctly states the law or that Smith's proposed instruction seventeen is supported by the evidence, I disagree with the majority's conclusion that the trial court abused its discretion in refusing to tender the proposed instructions. As such, I would affirm Smith's conviction.