Robert Dean WAIBEL, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 46A04–0308–CR–411.

Court of Appeals of Indiana.

May 21, 2004.

Transfer Denied July 23, 2004.

Kurt R. Earnst, Braje & Nelson, LLP, Michigan City, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROOK, Senior Judge.

### Case Summary

Appellant-defendant Robert Dean Wai-

bel appeals his convictions for robbery[1] and carjacking[2] as Class B felonies. We affirm.

### Issues

Waibel presents five issues for our review, which we consolidate and restate as follows:

I.  Whether the trial court abused its discretion in refusing his tendered jury instruction on intimidation, battery, and auto theft as lesser included offenses of robbery and carjacking;

II.  Whether the trial court abused its discretion in refusing his reasonable doubt instruction; and

III.  Whether the trial court abused its discretion in sentencing him to the presumptive term.

### Facts and Procedural History

Waibel and Wayne Christensen were friends. Waibel owned Agape's Pawn Shop in Michigan City, and he regularly carried a holstered .38 revolver. Christensen was an auto mechanic and regularly performed work on Waibel's cars. As payment for some of the work, Waibel gave Christensen $200 in cash and a ring from his pawnshop. Additionally, in the summer of 2002, Waibel lent Christensen $75 in cash. In exchange, Christensen gave Waibel the unsigned title to his 1985 Camaro as collateral for the personal loan.

In the fall of 2002, Waibel and Christensen's relationship began to deteriorate. Waibel became disgruntled with Christensen because he had not completed work on Waibel's cars. Waibel believed that Christensen owed him money for items he had bought at the pawnshop. Christensen thought that the only debt he owed to Waibel was the $75 loan.

In September 2002, Waibel referred his friend Sheila Meeks to Christensen because she needed a place to rent. Christensen rented a house in Michigan City and was subletting part of the house. Subsequently, Meeks rented the first-floor apartment in Christensen's house. Christensen and Meeks agreed that she would buy some of the furniture in the apartment. Meeks did not pay for the furniture. At the time, Christensen told Meeks that because the last tenant had failed to pay the electric bill, Meeks would have service for only a short time unless she transferred the utilities to her name. Meeks failed to transfer the utilities to her name.

A week later, Meeks' electricity was shut off. She became upset and decided to move out of the apartment. On September 25, 2002, Meeks contacted Waibel, who helped her move items out of the apartment onto his truck. In the process, Waibel injured his shoulder. He returned to his pawnshop and took various prescription medications for his pain. Meanwhile, Meeks enlisted the aid of Charles Hootman.

Meeks and Hootman resumed moving things out of the apartment. Shortly thereafter, Christensen arrived home. He saw that his furniture had been loaded onto Waibel's truck and argued with Meeks. Meeks told Christensen that Hootman was interested in renting the basement apartment. While Christensen showed Hootman the basement apartment, Meeks called Waibel to tell him that Christensen was home.

Carrying the title to Christensen's Camaro and armed with a .38 revolver and a pair of brass knuckles, Waibel returned to Christensen's house. Waibel talked with

**1.** Ind.Code § 35–42–5–1.

**2.** Ind.Code § 35–42–5–2.

Meeks and then confronted Christensen. Waibel accused Christensen of owing him several thousand dollars and demanded that Christensen sign over the title to the Camaro. Christensen refused to sign over the title and told Waibel that he would pay him back.

Waibel pointed the revolver at Christensen's head and said, "You're going to sign this title or I'm going to end it right now." Tr. at 68. Christensen understood the threat to mean that Waibel would shoot him if he did not comply with his request. Id. at 70. Waibel holstered the revolver, and Christensen signed over the title to his Camaro. Then, Waibel told Christensen, "I'm going to beat your ass." Id. at 71. Waibel put on brass knuckles and struck Christensen twice on the face. The force of Waibel's blows pushed Christensen against the garage. Waibel struck Christensen twice more in the chest. He told Christensen, "I don't want to see you in this town again," and left. Id. at 74. At Waibel's command, Hootman drove the Camaro to Waibel's pawnshop.

On September 27, 2002, Waibel told Stephanie Lewartoski in an e-mail, "Let's just say that I have a new hobby: Grand Theft Auto of Junk Cars at Gunpoint!!! What the Hell, I needed something to do . . . [.]" Id. at 134. A few days later, Lewartoski saw Christensen at Wal–Mart and noticed that his face was bruised. She called Waibel to inquire about the altercation. Waibel told her, "Yeah, I hit Wayne with the knuckles," and stated that Christensen had gotten what he deserved. Id. at 141.

On October 4, 2002, Michigan City Police Detective Larry Litchford interviewed Waibel regarding the incident. Waibel told Detective Litchford that he had asked Christensen to sign over the title and that he had refused. Waibel explained that he

had struck Christensen because he thought that Christensen was going to strike him. He admitted hitting Christensen "hard." Id. at 279. Waibel could not recall whether he was wearing brass knuckles at the time of the incident. Waibel told Detective Litchford that he had pushed Christensen up against the garage, that he had seen the fear in his eyes, and that Christensen had agreed to sign the title. Waibel admitted striking Christensen again after he signed the title.

The State charged Waibel with robbery and carjacking as Class B felonies and burglary[3] as a Class C felony. On June 18, 2003, a jury found him guilty of robbery and carjacking. On July 17, 2003, the trial court merged the robbery conviction with the carjacking conviction and sentenced Waibel to the presumptive term of ten years. This appeal ensued.

## Discussion and Decision

### I. Lesser Included Offenses

■ Waibel contends that the trial court erred in refusing his tendered jury instruction on intimidation, battery, and auto theft as lesser included offenses of robbery and carjacking. When asked to instruct the jury on a lesser included offense, trial courts are to apply a three-part test:

First, a trial court must compare the statute defining the crime charged with the statute defining the alleged lesser included offense. If (a) the alleged lesser included offense may be established by proof of the same material elements or less than all the material elements defining the crime charged, or (b) the only feature distinguishing the alleged lesser included offense from the crime charged is that a lesser culpability is required to established the commission

---

3. Ind.Code. § 35–43–2–1.

of the lesser offense, then the alleged lesser included offense is *inherently* included in the crime charged. If an offense is inherently included in the crime charged, then a trial court should proceed to step three below.

Second, if a trial court determines that an alleged lesser included offense is not inherently included in the crime charged under step one, then it must compare the statute defining the alleged lesser included offense with the charging instrument in the case. If the charging instrument alleges that the means used to commit the crime charged include all of the elements of the alleged lesser included offense, then the alleged lesser included offense is *factually* included in the crime charged, and the trial court should proceed to step three below. If the alleged lesser included is neither *inherently* nor *factually* included in the crime charged, then the trial court should not give a requested instruction on the alleged lesser included offense.

Third, if a trial court has determined that an alleged lesser included offense is *either* inherently *or* factually included in the crime charged, it must look at the evidence presented in the case by both parties. If there is a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense and if, in view of this dispute, a jury could conclude that the lesser offense was committed but not the greater, then it is reversible error for a trial court not to give an instruction, when requested, on the inherently or factually included lesser offense. If the evidence does not support the giving of a requested instruction on an inherently or factually included lesser offense, then a trial court should not give the requested instruction.

*Wright v. State,* 658 N.E.2d 563, 566–67 (Ind.1995) (citations omitted) (footnotes omitted).

■ When a trial court refuses tendered lesser included offense instructions on their merits, "but the record provides neither a finding that there is no serious evidentiary dispute nor a specific claim from the defendant as to the nature of the that dispute, the standard of review is an abuse of discretion." *Brown v. State,* 703 N.E.2d 1010, 1020 (Ind.1998). "The same is true if the trial court does make a finding that there is no serious evidentiary dispute." *Id.* However, where the defendant at trial identifies a specific evidentiary dispute but the trial court makes no express finding, de novo is the appropriate standard of review. *Id.* In this case, the standard of review is abuse of discretion because there is no finding of a serious evidentiary dispute on the record, and Waibel did not identify the nature of his evidentiary dispute at trial.[4]

The State charged Waibel with Class B felony robbery and carjacking. The charging instrument provided, in relevant part:

On or about the 25th day of September, 2002, at or about 435 N. Carroll Avenue, Michigan City, LaPorte County, Indiana, ROBERT DEAN WAIBEL did knowingly or intentionally take property, to wit: a 1985 Chevrolet Camaro from the presence of another person, to wit: Wayne E. Christensen; by placing him in fear and using force or threaten-

---

4. At trial, Waibel argued: "All such lesser included offenses are both element-wise, included in the aforementioned Robbery and Carjacking charges and are also very much supported by the evidence of the facts submitted at trial, and pursuant to Indiana law, should have been given, and defendant objects to the Court not giving that instruction." Appellant's App. at 13.

ing the use of force, to-wit: by beating said Wayne E. Christensen about the head and face resulting in bodily injury or while the defendant was displaying a deadly weapon, to wit: a handgun.

. . . .

On or about the 25th day of September, 2002, at or about 435 N. Carroll Avenue, Michigan City, LaPorte County, Indiana, ROBERT DEAN WAIBEL did knowingly or intentionally take a motor vehicle, to wit: a 1985 Chevrolet Camaro from the presence of the another person, to wit: Wayne E. Christensen; by placing him in fear or by using force or threatening the use of force, to-wit: by beating said Wayne E. Christensen about the head and face resulting in bodily injury.

Appellant's App. at 64.

Under Indiana Code Section 35–42–5–1, robbery is defined as follows:

A person who knowingly or intentionally takes property from another person or from the presence of another person:

(1) by using or threatening the use of force on any person; or

(2) by putting any person in fear;

commits robbery, a Class C felony. However, the offense is a Class B felony if it is committed while armed with a deadly weapon or results in bodily injury to any person other than a defendant, and a Class A felony if it results in serious bodily injury to any person other than a defendant.

Carjacking is defined as follows:

A person who knowingly or intentionally takes a motor vehicle from another person or from the presence of another person:

(1) by using or threatening the use of force on any person; or

(2) by putting any person in fear;

commits carjacking, a Class B felony. Ind.Code § 35–42–5–2.

### A. Intimidation

■ Waibel contends that he was entitled to an instruction on intimidation as a lesser included offense of robbery and carjacking. Under Indiana Code Section 35–45–2–1, intimidation is defined in relevant part as follows:

(a) A person who communicates a threat to another person, with the intent:

(1) that the other person engage in conduct against the other person's will;

(2) that the other person be placed in fear of retaliation for a prior lawful act; or

(3) of causing:

(A) a dwelling, a building, or another structure; or

(B) a vehicle;

to be evacuated;

commits intimidation, a Class A misdemeanor.

. . . .

(b) However, the offense is a:

. . . .

(2) Class C felony if, while committing it, the person draws or uses a deadly weapon.

. . . .

(c) "Threat" means an expression, by words or action, of an intention to:

(1) unlawfully injure the person threatened or another person, or damage property;

. . . .

(8) cause the evacuation of a dwelling, a building, another structure, or a vehicle.

■ Under the first step of *Wright*, we note that intimidation may not be estab-

lished by proof of the same or some of the material elements of robbery and carjacking. Intimidation is established by proof that the defendant communicated a threat to another person with the intent: that the person engage in conduct against his will, or of causing a vehicle to be evacuated. Ind.Code § 35–45–2–1. In contrast, the material elements of robbery and carjacking are established by proof that the defendant knowingly and intentionally took property or a motor vehicle by using or threatening the use of force or by placing a person in fear. Ind.Code §§ 35–42–5–1, –2. Thus, intimidation is not an inherently included lesser offense of either robbery or carjacking.

Under the second step of *Wright*, we must next compare the intimidation statute with the charging instrument. The charging instrument alleged that Waibel displayed a handgun, took Christensen's car by force or threatening the use of force, and beat him in the head and face causing bodily injury. Thus, the charging instrument does not allege that the means used to commit robbery and carjacking included all the elements of intimidation. Further, it does not allege that Waibel merely communicated a threat to Christensen with the intent that he engage in conduct against his will or which would cause him to evacuate his vehicle, as required by the intimidation statute. See Ind.Code § 35–45–2–1. In fact, Christensen testified that Waibel held a gun to his head, forced him to sign the title to the Camaro, and beat him before taking his car. Tr. at 68–70. Hence, intimidation is not a factually lesser included offense of either robbery or carjacking. *See Wethington v. State*, 560 N.E.2d 496, 509 (Ind.1990) (noting that the element of intimidation which distinguishes it from robbery is the communication of a threat to induce compliance with the communicator's will and that factual allegations in robbery do not include verbal threats made against the victims). Accordingly, the trial court did not abuse its discretion in refusing Waibel's tendered instruction on intimidation as a lesser included offense of robbery and carjacking.

### B. Battery

■ Waibel also contends that he was entitled to an instruction on battery as a lesser included offense of robbery and carjacking. Under Indiana Code Section 35–42–2–1, battery is defined in relevant part as follows:

> (a) A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class B misdemeanor. However, the offense is:
>
> (1) a Class A misdemeanor if:
>
> (A) it results in bodily injury to any other person;
>
> . . . .
>
> (3) a Class C felony if it results in serious bodily injury to any other person or if it is committed by means of a deadly weapon[.]

■ Under the first step of *Wright*, we note that battery may not be established by proof of the same or some of the material elements of robbery and carjacking. Battery is established by proof that the defendant knowingly and intentionally touched another person in a rude, insolent, or angry manner resulting in bodily injury. Ind.Code § 35–42–2–1. In contrast, the material elements of robbery and carjacking are established by proof that the defendant knowingly and intentionally took property or a motor vehicle by using or threatening the use of force or by placing a person in fear. Ind.Code §§ 35–42–5–1, –2. Thus, battery is not an inherently included lesser offense of either robbery or carjacking.

Under the second step of *Wright,* we compare the battery statute with the charging instrument. The charging instrument alleged that Waibel displayed a handgun, took Christensen's car by force or threatening the use of force, and beat him in the head and face causing bodily injury. The means used to commit robbery and carjacking emcompass the elements of battery: knowingly and intentionally touching another person in a rude, insolent, manner resulting in bodily injury. Accordingly, battery is factually a lesser included offense of robbery and carjacking.

Under the final step of *Wright,* we must now determine whether there is a serious evidentiary dispute as to any element that distinguishes robbery and carjacking from battery. In this case, Christensen testified that after he refused to sign the title over to Waibel, he pointed a revolver at his head and said, "You're going to sign this title or I'm going to end it right now." Tr. at 68. Christensen stated that in response to Waibel's threat, he signed the title. *Id.* at 69. Additionally, Detective Litchford testified that Waibel had given a statement in which he had admitted: asking Christensen to sign over the title, hitting him "hard," pushing him and seeing the fear in his eyes, and inducing him to agree to sign the title. *Id.* at 279. The evidence presented at trial conclusively established that Waibel took Christensen's Camaro. Accordingly, the trial court did not abuse its discretion in refusing Waibel's battery instruction. *See Crowe v. State,* 485 N.E.2d 115, 116 (Ind.1985) (holding that battery was not lesser included offense of robbery, although evidence demonstrated that victim received blows constituting rude and insolent touching, because evidence conclusively demonstrated that robbery took place).

### C. Auto Theft

■ Waibel contends that he was entitled to an instruction on auto theft as a lesser included offense of robbery and carjacking. Under Indiana Code Section 35–43–4–2.5, auto theft is defined in relevant part as follows:

(a) As used in this section, "motor vehicle" has the meaning set forth in IC 9–13–2–105(a).

(b) A person who knowingly or intentionally exerts unauthorized control over the motor vehicle of another person, with intent to deprive the owner of:

(1) the vehicle's value or use; or

(2) a component part (as defined in IC 9–13–2–34) of the vehicle;

commits auto theft, a Class D felony[.]

■ Under the first step of *Wright,* we note that auto theft may be established by proof of the same material elements as robbery. Auto theft is established by proof that the defendant knowingly or intentionally exerted unauthorized control over the motor vehicle of another person with the intent to deprive that person of any part of its use or value. Ind.Code § 35–43–4–2.5. Similarly, robbery is established by proof that the defendant knowingly or intentionally took property from another person by using or threatening the use of force or by putting the person in fear. Ind.Code § 35–42–5–1. Auto theft may also be established by proof of the same material elements as carjacking. Like auto theft, carjacking is established by proof that the defendant knowingly or intentionally took a motor vehicle from another by using or threatening the use of force or by placing the person in fear. Ind.Code § 35–42–5–1. Thus, auto theft is an inherently lesser included offense of robbery and carjacking. Consequently, we proceed to the third and final step of the analysis.

Under the final step of *Wright,* we determine whether there is a serious eviden-

tiary dispute as to any element that distinguishes robbery and carjacking from the auto theft. The material element that distinguishes auto theft from robbery and carjacking is using force, threatening force, or placing the victim in fear. Here, Christensen testified that Waibel pointed a revolver to his head, threatened him, and induced him to sign over the title to the Camaro. Tr. at 68–70. Christensen also testified that afterwards, Waibel beat him and took his car. *Id.* Additionally, Detective Litchford testified that after the incident Waibel gave him a statement that was consistent with Christensen's version of events. *Id.* at 279. Accordingly, the trial court did not abuse its discretion in refusing Waibel's auto theft instruction. *See Sanders v. State,* 713 N.E.2d 918, 921 (Ind.Ct.App.1999) (concluding that defendant was not entitled to instruction on theft as a lesser included offense of carjacking because no serious evidentiary dispute existed as to defendant's use of force).

## II. Reasonable Doubt Instruction

■ Waibel also contends that the trial court abused its discretion in refusing his reasonable doubt instruction. Waibel tendered the following instruction on reasonable doubt: [5]

The State has the burden of proving the Defendant guilty beyond a reasonable doubt. Some of you may have served as jurors in civil cases, where you were told that it is only necessary to prove that a fact is more likely true than not true. In criminal cases, the State's proof must be more powerful than that. It must be beyond a reasonable doubt.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the Defendant's guilt. There are very few things in this world we know with

absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the Defendant is guilty of the crime charged, you should find him guilty. If, on the other hand, you think there is a real possibility that he is not guilty, you should give him the benefit of the doubt and find him not guilty.

Appellant's App. at 41.

The trial court refused Waibel's instruction and gave Indiana Pattern Jury Instruction 1.16, which provides:

A reasonable doubt is a fair, actual and logical doubt that arises in your mind after an impartial consideration of all the evidence and circumstances in the cases. It should be a doubt based upon reason and common sense and not a doubt based upon imagination or speculation.

To prove the defendant's guilt of the elements of the crime charged beyond a reasonable doubt, the evidence must be such that it would convince you of the truth of it, to such a degree of certainty that you would feel safe to act upon such conviction, without hesitation, in a matter of the highest concern and importance to you.

*Id.* at 52.

■ It is well settled that the manner of instructing a jury is left to the sound discretion of the trial court; we will reverse only if the court abuses that discretion. *Smith v. State,* 777 N.E.2d 32, 34 (Ind.Ct.App.2002), *trans. denied.* An abuse of discretion occurs if the instructions, considered as a whole and in reference to each other, mislead the jury as to

---

5. Waibel's tendered instruction is similar to the Federal Judicial Center's reasonable doubt instruction recommended by our su-

preme court in *Winegeart v. State,* 665 N.E.2d 893, 902–03 (Ind.1996).

the applicable law. *Id.* In reviewing a trial court's decision to give or refuse a tendered instruction, we consider whether the instruction correctly states the law; whether there is evidence in the record to support the giving of the instruction; and whether the substance of the tendered instruction is covered by other instructions that are given. *Chambers v. State,* 734 N.E.2d 578, 580 (Ind.2000).

Specifically, Waibel argues that the trial court committed reversible error in giving an erroneous reasonable doubt instruction. Our supreme court rejected that argument in *Winegeart v. State,* 665 N.E.2d 893, 903 (Ind.1996). In *Winegeart,* the defendant contended that the trial court's use of a reasonable doubt instruction that contained the words "fair" and "actual," expanded the quantum of doubt needed to constitute "reasonable" doubt and that the instruction authorized the jury to find guilt based on a degree of proof below that required by the Due Process Clause because it referred to "moral certainty" instead of "evidentiary certainty." *Id.* at 896. Our supreme court concluded:

> A substantial improvement in effective communication may be achieved by utilization of the Federal Judicial Center's proposed instruction. We therefore authorize and recommend (but, acknowledging that two of the five members of this Court find the present Indiana Pattern Jury Instruction preferable, do not mandate) that Indiana trial courts henceforth instruct regarding reasonable doubt by giving the above-quoted Federal Judicial Center Instruction preferably with no supplementation or embellishment.
>
> While the challenged instruction in the present case is less effective than we would prefer, it is not so deficient as to be constitutionally defective. We therefore reject the defendant's contention of

reversible error regarding the trial court's reasonable-doubt instruction.

*Id.* at 902–03 (footnote omitted).

Given our supreme court's unequivocal holding in Winegeart, we must decline Waibel's request to hold that that trial court committed reversible error in refusing his tendered reasonable doubt instruction in favor of the one it gave to the jury. Here, the trial court's instruction informed the jury that a reasonable doubt is a fair, actual, and logical doubt and that to prove the defendant's guilt, the evidence had to convince them of the truth of it, to such a degree of certainty, that they would feel safe to act upon such conviction. Appellant's App. at 52. This instruction was constitutionally sufficient, a correct statement of the law, and adequately covered the substance of Waibel's rejected instruction. Accordingly, we conclude that the trial court did not abuse its discretion in rejecting Waibel's instruction.

### III. Sentencing

■■■ Waibel contends that the trial court abused its discretion in failing to consider mitigating factors and sentencing him to the presumptive term. "Sentencing decisions are entrusted to the sound discretion of the trial court and will be reversed only upon a showing of manifest abuse of that discretion." *Beck v. State,* 790 N.E.2d 520, 522 (Ind.Ct.App.2003). When the basic sentence is imposed, we will presume that the trial court considered the alternatives. *Anderson v. State,* 743 N.E.2d 1273, 1279 (Ind.Ct.App.2001). Moreover, "[t]he trial court is not required to find the presence of mitigating circumstances." *Bocko v. State,* 769 N.E.2d 658, 667 (Ind.Ct.App.2002), *trans. denied.* "When a defendant offers evidence of mitigators, the trial court has the discretion to determine whether the factors are mitigating, and it is not required to explain why it

does not find the proffered factors to be mitigating." *Id.*

Waibel contends that the trial court ignored several mitigating factors: (1) that the crime was unlikely to recur; (2) that his overuse of pain medication excused or justified the crime; and (3) that he was remorseful and not likely to commit another crime. At sentencing, the trial court identified Waibel's lack of criminal record as a mitigating factor. Appellant's App. at 38. The trial court also acknowledged Waibel's proffered mitigating factors and rejected them:

> You crossed the line. It indicates a very dangerous situation, in my opinion, of the people that do walk around carrying guns, and then carrying guns and taking narcotic drugs and then using these guns to fulfill their own desires as you did. You violated the fact that you were given the trust, a trusting position to carry a weapon and you abused it ... [.] You know, your testimony here at the sentencing hearing, doesn't track with your testimony at the trial. It doesn't track with the statements given by the police. I view you as a very manipulative person. I think you attempted to manipulate the police, and you tried to manipulate me today. You don't appear to be a candidate for rehabilitation. You will tell me what you think I want to hear, not your actions in no way show me, in any way that you're contrite, sorry, or attempting to make any changes in your life. I fear you being out in the community, because your mental makeup is such that it's almost sociopathic, that anthing that Bob Waibel wants, he's going to get and he can manipulate people as he sees fit. The only mitigating factor that I can find is the fact that you had no prior criminal record. All the others—I do feel it's likely to reoccur.

*Id.* at 36–38. The trial court did not abuse its discretion in declining to find Waibel's proffered factors to be mitigating. *See Legue v. State,* 688 N.E.2d 408, 411 (Ind. 1997) (noting that "[t]he trial court is not obligated to accept the defendant's assertions as to what constitutes a mitigating circumstance.").

Affirmed.

SULLIVAN, J., and ROBB, J., concur.