**Damon FORTE, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 49S00–0012–CR–784.

Supreme Court of Indiana.

Dec. 11, 2001.

Katherine A. Cornelius, Marion County Public Defenders Office, Indianapolis, Indiana, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

Damon Forte was convicted of felony murder and sentenced to sixty years imprisonment. In this direct appeal, Forte contends he was denied a fair trial because (1) he was improperly restrained with leg shackles during the trial, and (2) the trial court erred in denying one of Forte's tendered jury instructions. We affirm the judgment of the trial court.

### Factual and Procedural Background

In the wee hours of December 4, 1998, Damon Forte and his cousin, Alfred Stewart, were "shooting cans" with Forte's .22 caliber rifle in an alley behind the Bigfoot parking lot at 2901 East 38th Street in Indianapolis. According to Forte, Johnnie Smith approached him and asked about the possibility of buying some drugs. When Forte told Smith that he had no drugs to sell, Smith allegedly pulled a wad of money out of his pocket to show that he could afford the transaction. Forte again rejected the proposal, and Smith began to walk away, but returned after Stewart announced that he had drugs to sell. At that point, Smith observed Forte's rifle in Stewart's hands and tried to back away from the men. Stewart attacked him and a struggle ensued. What happened next is not clear, but eventually either Stewart or Forte fired the rifle several times at Smith. Smith died from a gunshot wound to the chest.

Forte and Stewart collected Smith's money from the ground and ran from the scene. Forte, now holding the rifle, threw it behind the garage of his uncle's house at 2949 East 38th Street. Forte then called his girlfriend, Ashley Rice, who met Forte and Stewart down the street. Rice testified that the two men looked "shocked," and that Forte gave her $200 and told her "I think we just killed somebody." Forensic tests confirmed that the bullet recovered from Smith's body and a spent shell casing found near his body were both fired from Forte's .22 caliber rifle. Forte was charged with felony murder and Class A robbery. The jury convicted him of both counts and the trial court sentenced him to sixty years on the felony murder conviction.

### I. Shackles

Subsequent to his arrest, but prior to trial, Forte twice attempted to escape from the Marion County jail. The second attempt culminated in a violent attack on a correctional officer. As a result of these incidents, Forte was charged with attempted escape, attempted murder, criminal confinement, conspiracy to escape, and prisoner in possession of a dangerous device. These charges were pending at the time of Forte's murder trial. Concerned that Forte might again attempt to escape,

the trial court ordered him to wear leg shackles during the trial.

As a general rule, a criminal defendant has the right to appear before the jury without bonds or shackles. *Bivins v. State*, 642 N.E.2d 928, 936 (Ind.1994). In its discretion, however, the trial court may order a defendant to wear restraints when it is necessary to prevent the defendant's escape, to protect those present in the courtroom, and to maintain order during the trial. *Id.* An order to restrain a defendant is reviewed for an abuse of discretion. *Id.*

Forte argues that in determining whether to order restraints, the trial court may consider only the in-court behavior of the defendant. Behavior that occurs outside of the courtroom, Forte contends, is irrelevant. We do not agree. Forte has cited no cases that support this position, and precedent is clearly to the contrary. *See, e.g., id.* at 935–36 (upholding shackling decision based on defendant's attempts to escape from custody even though defendant had not attempted to escape from court proceedings); *Lucas v. State*, 499 N.E.2d 1090, 1095 (Ind.1986) (upholding shackling decision based on defendant's two escape attempts during pre-trial incarceration, even though defendant had not been formally charged with those crimes); *Smith v. State*, 475 N.E.2d 27, 30 (Ind. 1985) (upholding shackling decision based on defendant's frequent outbursts of violence in jail, including holding his public defender hostage there). Nor does Forte's contention seem sensible. The need for courtroom security is to be evaluated on the basis of all relevant information, and we see no reason to require the trial court to put on blinders as to extra-courtroom activity.

In this case, the trial court considered Forte a genuine escape risk, based on his two previous attempts. The court determined that leg shackles would be the least intrusive and most effective escape deterrent, and took the affirmative measure of placing white poster board in front of the defense table to prevent the jury from seeing the shackles. Forte has not alleged that any juror knew of the shackles or was otherwise prejudiced by their presence. He has not shown an abuse of the trial court's discretion.

## II. Jury Instructions

Forte next alleges that he was denied a fair trial because the court failed to give one of his proposed jury instructions. The State tendered and received an accomplice liability instruction which read as follows:

A person is responsible for the actions of another person, when, either before or during the commission of a crime, he knowingly aids, induces, or causes the other person to commit a crime. To aid is to knowingly support, help, or assist in the commission of a crime.

Proof of the defendant's failure to oppose the commission of a crime, companionship with the person committing the offense, and conduct before and after the offense may be considered in determining whether aiding may be inferred.

Forte tendered three accomplice liability instructions, one of which he subsequently withdrew. Of the remaining two, the court issued the one that read, "Mere presence at the scene of the crime is insufficient to establish guilt." The court rejected the final instruction, which read, "The trier of fact must look for affirmative conduct, either by act or word, from which to draw reasonable inferences that the accused was part of a common plan to commit a crime," because the court believed the substance of that instruction was covered by the State's accomplice liability instruction.

This Court reviews a trial court's refusal to give a tendered instruction for an abuse of discretion. *Cline v. State,* 726 N.E.2d 1249, 1256 (Ind.2000). We consider (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions that are given. *Chambers v. State,* 734 N.E.2d 578, 580 (Ind.2000), *reh'g denied.* The trial court does not abuse its discretion when it rejects an instruction that is already covered by others given at trial. *Warren v. State,* 725 N.E.2d 828, 834 (Ind.2000).

In this case, Forte does not contend the instructions were incorrect statements of the law. Rather, he claims the omitted instruction was necessary for a complete understanding of the law of accomplice liability. We do not agree. The State's jury instruction used active verbs such as aid, induce, support, help, and assist to inform the jury that some affirmative conduct or action on Forte's part was required. It also listed factors the jury could use to infer participation, including the defendant's conduct before and after the offense. Finally, the instruction tendered by Forte informed the jury that mere presence at the scene of the crime was not sufficient to establish guilt. Accordingly, the jury was already informed that it must find some affirmative conduct, either by act or word, from which to infer Forte's participation before it could find him guilty under a theory of accomplice liability. A trial court must exercise judgment in determining the length, detail, and complexity of jury instructions. *Chambers,* 734 N.E.2d at 581. Here, the instructions given adequately covered the requirements for accomplice liability. The trial court did not abuse its discretion by refusing to give additional, repetitive instructions on the topic.

## Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN, and RUCKER, JJ., concur.