Brandy COOPER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 35A02–0409–CR–749.

Court of Appeals of Indiana.

Aug. 9, 2005.

Rehearing Denied Sept. 15, 2005.

---

1248

Daniel M. Grove, Special Assistant to the Public Defender of Indiana, Indianapolis, for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, for Appellee.

**OPINION**

DARDEN, Judge.

*STATEMENT OF THE CASE*

Brandy Cooper appeals her conviction, after a jury trial, of battery upon a child causing injury, a class D felony, and sentence terms imposed by the trial court thereon.

We affirm in part and reverse and remand in part.

*ISSUES*

1. Whether sufficient evidence supports her conviction.

2. Whether the trial court committed reversible error when it failed to give Cooper's proposed instruction on the "legal authority" of a parent to discipline her child.

3. Whether the trial court's order at sentencing that Cooper (a) pay restitution for the lost wages of the child victim's father and stepmother, and (b) pay a fine in the amount of $2,500.00 is erroneous.

*FACTS*

K.S. lived with his twenty-five year-old mother, Cooper. On the evening of September 10, 2003, Cooper and four-year-old K.S. went to the home of Kathleen Morris. Cooper and Morris had been friends for several years, and the women planned to have supper together and visit. Cooper wanted to smoke a cigarette. Because Morris did not allow smoking in her home, the women went to Morris' porch. Morris' children went outside, but Cooper told K.S. to stay inside the house because he had "done something." (Tr. 88). As Cooper and Morris sat on the porch talking, K.S. was in the entryway behind the storm door between the porch and the house. K.S. was "hanging on the doorknob" of the wooden door standing open inside the entryway. (Tr. 91).

K.S. asked Cooper several times whether he could go outside, interrupting her

conversation with Morris. Cooper initially simply said, "No," but she finally yelled, "God damn it K[.]. What did I tell you?" and she "pulled the [storm] door open and she went in after him." (Tr. 91–92). K.S. "backed up," saying "No. No." (Tr. 92). Cooper "grabbed his arm and swung him into her and as she did that," the right side of K.S.'s head struck the doorknob. (Tr. 92). Cooper yelled again, "What did I tell you?" *Id.* K.S. "grabbed the area that he hit his head" and "started crying and screaming and [Cooper] held onto his arm." (Tr. 93). Cooper then struck K.S. on his face "very hard" with her open hand "five or six times." (Tr. 93, 94). K.S. was "crying and ... screaming" while she hit him, and Cooper was saying, "Knock it the f* * * off," and "Quit[ ] f* * *ing asking so many questions." (Tr. 94). Then Cooper "let go of him and he just stood there sobbing" as Cooper walked away and went back to the porch. *Id.* Cooper told Morris "she was just tired of his asking so many questions." (Tr. 95). Later that evening, Morris observed a "goose egg" that was approximately "quarter size" on the right side of K.S.'s head. (Tr. 98).

A couple of days later, Morris reported the incident to K.S.'s father, Marshall Smith.[1] The "goose egg" was no longer visible at that time. Smith then reported the matter to the police, and an investigation ensued. On October 1, 2003, the State charged Cooper with battery, as a class D felony.

A jury trial was held on July 1—2, 2004. Morris testified to the foregoing. The jury heard a taped statement that Cooper made to the police on September 26, 2003, in which she repeatedly denied being able to remember details of the incident described by Morris. Cooper then testified

that she was "now positive" about what had happened. (Tr. 328). According to Cooper, K.S. "accidentally hit his head on the door because he pulled away when [she] went to spank him"; she had only "smacked" K.S. "twice" on "the side of the cheek"; and K.S. did not have a "goose egg" that night, although she had admitted in her taped statement that he did. (Tr. 329, 326, 331). At the conclusion of the evidence, Cooper requested an instruction on "legal authority." The trial court refused to give the instruction. The jury convicted Cooper as charged.

The sentencing hearing took place on August 17, 2004. Citing the pre-sentence investigation, Cooper's counsel emphasized that Cooper had "no criminal record whatsoever" prior to her conviction. Counsel further advised the trial court that "as a result of this conviction," Cooper had "lost her job." (Sent. Tr. 6). Counsel asked that Cooper be placed on probation. The State "submitted a restitution claim form filed on behalf of" K.S.'s father and stepmother. (Sent.Tr.10). The form indicates that they had "lost wages" in a total amount of $330.80. (App.147). The trial court sentenced Cooper "to one and one-half (1½) years," suspending "all but sixty (60) days." (Sent. Tr. 13). It further ordered "a restitution judgment in the amount of $330.80 ... for expenses directly related to this matter" and imposed a fine of $2,500.00. *Id.*

*DECISION*

1. *Evidence Sufficiency*

■ "In reviewing a claim of insufficient evidence, we will affirm the conviction unless, considering only the evidence and reasonable inferences favorable to the

1. Smith was not married to Cooper and did not live with Cooper and K.S.

judgment and neither reweighing the evidence nor judging the credibility of the witnesses, we conclude that no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Dunlap v. State*, 761 N.E.2d 837, 839 (Ind. 2002).

"A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner" has committed the offense of battery. Ind.Code § 35–42–2–1(a). Further, the offense is a class D felony "if it results in bodily injury to ... a person less than fourteen (14) years of age and is committed by a person at least eighteen (18) years of age." I.C. § 35–42–2–1(a)(2)(B).

■ Cooper argues that K.S.'s injury to the right side of his head was an accident caused when he bumped his head after she grabbed him and pulled him toward herself to "administer proper and reasonable chastisement to her child." Cooper's Br. at 8. She cites *Mitchell v. State*, 813 N.E.2d 422, 427 (Ind.Ct.App.2004), *trans. denied*, for the proposition that parental punishment is only unlawful when it is excessive. However, as we noted in *Mitchell*, an argument that the parent's behavior "was not excessive but was justified" as a matter of "parental discipline" is "merely an invitation to reweigh the evidence." 813 N.E.2d at 428. In other words, such a determination is for the jury.

Further, the evidence also revealed that Cooper struck K.S.'s face with substantial force at least five times. Cooper concedes that whether this "constitutes an unlawful battery" is a determination to be made by the jury. Cooper's Br. at 8.

It is undisputed that Cooper was over the age of eighteen and that K.C. was less than fourteen years of age. Morris' testimony about what Cooper was yelling at K.S. supports the reasonable inference that when Cooper grabbed and struck K.S., she was touching him in an angry manner. Evidence that K.S. was crying and screaming supports the reasonable inference that he suffered pain from bodily injuries inflicted by Cooper's action of grabbing him and striking him multiple times. Hence, the evidence supports the conclusion that the State proved beyond a reasonable doubt that Cooper knowingly or intentionally touched K.S. in an angry manner. Further, the evidence supports the reasonable inference by the jury that Cooper's "behavior was excessive, unreasonable, and outside the bounds of appropriate parental discipline, and the mere fact that it was imposed by an out-of-control parent upon h[er] four-year-old child does not shield [Cooper] from criminal liability." *Mitchell*, 813 N.E.2d at 428.

### 2. *Jury Instruction*

■ We review a trial court's refusal to give a tendered instruction for an abuse of discretion. *Forte v. State*, 759 N.E.2d 206, 209 (Ind.2001). We consider (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions that were given. *Id.*

Cooper tendered the following instruction to the trial court:

A person may not be convicted for engaging in conduct that would otherwise be a crime if she has legal authority to engage in the conduct.

The term "legal authority" is defined by law as follows:

"A person is justified in engaging in conduct otherwise prohibited if she has legal authority to do so."

It is an issue in this case whether the Defendant had legal authority to discipline her child. Under Indiana law, the defense of legal authority has been construed to include reasonable discipline which would otherwise constitute battery. *Smith v. State*, 489 N.E.2d 140 (Ind.Ct.App.1986).

The State has the burden of proving beyond a reasonable doubt that the Defendant did not have legal authority.

(App.77).

■ Cooper argues that this instruction was a correct statement of the law, was supported by the evidence, and was not covered by any other instructions.[2] However, we find that her arguments must fail and that the jury was not required to be so instructed because "whether [Cooper] had legal authority to discipline" K.S. was never at issue. The State never argued that Cooper lacked legal authority to discipline K.S.; it argued that Cooper's conduct exceeded the bounds of reasonable discipline.[3] As our supreme court has noted, the second prong of the standard of review in the challenge of instructional error ("whether the evidence supports giving the instruction") also encompasses consideration of " 'whether there was evidence to render the instruction applicable to the issues.' " *Hoskins v. State*, 737 N.E.2d 383, 385 (Ind.2000) (quoting *Williams v. State*, 481 N.E.2d 1319, 1322 (Ind.1985)).

Thus, where the tendered instruction was not "applicable to the issues raised," it was not an abuse of discretion for the trial court to decline the tendered instruction. *Hoskins*, 737 N.E.2d at 385. *See also Jacobs v. State*, 640 N.E.2d 61, 67 (Ind.Ct. App.1994), *trans. denied* ("a trial court should not give an instruction which is not relevant to the issues the jury must decide in reaching its verdict"). Because "whether [Cooper] had legal authority to discipline" K.S. was not at issue, the trial court did not abuse its discretion when it refused Cooper's tendered instruction.

### 3. Sentence Terms

■ Sentencing decisions rest within the discretion of the trial court and are reviewed upon appeal for an abuse of discretion. *Smallwood v. State*, 773 N.E.2d 259, 263 (Ind.2002).

■ Cooper first argues that the trial court abused its discretion when it ordered that Cooper pay restitution of $330.80— the amount claimed by K.S.'s father and stepmother as lost wages. Cooper cites the statutory authority for a restitution order and asserts that it does not authorize the restitution ordered here.

■ The trial court's sentencing authority is only that which is conferred by the legislature. *Kindred v. State*, 771 N.E.2d 760, 763 (Ind.Ct.App.2002). Pursuant to Indiana Code § 35-50-5-3(a), "in addition to any sentence imposed" or "as a condition or probation," the trial court is authorized to order the person convicted

---

2. The record does not reflect that Cooper made any argument to the trial court as to why the instruction was necessary. The trial court gave no reason for refusing to give the instruction, and Cooper did not press the trial court in this regard.

3. In its final closing argument, the State framed the issue as being Cooper's choice of how and when to discipline K.S.: whether she "cho[ ]se reasonable discipline or ... cho[ ]se excessive discipline." (Tr. 364).

to make restitution to the victim of the crime, the victim's estate, or the family of a victim who is deceased. The court shall base its restitution order upon a consideration of

(1) property damages of the victim incurred as a result of the crime ...;

(2) medical and hospital costs incurred by the victim ... as a result of the crime;

(3) the cost of medical laboratory tests to determine ...;

(4) earnings lost by the victim (before the date of the sentencing) as a result of the crime including earnings lost while the victim was hospitalized or participating in the investigation or trial of the crime; and

(5) funeral, burial, or cremation costs . . . .

The statutes do not specifically provide for restitution for earnings lost by the parent of a victim. However, in *Reinbold v. State*, 555 N.E.2d 463, 470 (Ind.1990), our supreme court held that the word "victim" in the statute authorizing restitution properly included "those shown to have suffered injury, harm, or loss as a direct and immediate result of the criminal acts of a defendant."

In *Huddleston v. State*, 764 N.E.2d 655 (Ind.Ct.App.2002), the defendant was charged with two counts of child molesting; he pleaded guilty to a single count pursuant to a plea agreement whereby the second count was dismissed. At sentencing, the trial court ordered restitution in the amount of $1,380.00 for wages lost by the mother. We considered evidence that the mother "missed work without pay due to various pre-trial dates, trial dates, counseling appointments, and other related

proceedings in relation to th[e] case, the computation of [the mother]'s wages, and [the mother]'s testimony" to the trial court. *Id.* at 657. We found this to be "sufficient evidence to order restitution" because it showed that the mother "suffered injury, harm, or loss as a direct and immediate result of the criminal acts of a defendant." *Id.* at 647

The State appears to assert that because a claim was submitted on behalf of K.S.'s father and stepmother as to lost earnings, this "established that K.S.'s father and stepmother suffered injury, harm, or loss as a direct and immediate result of the criminal acts of" Cooper. State's Br. at 11. The restitution claim form is unsigned, no documentation is attached, and it simply states that Smith had lost wages of $194.70 and his wife of $236.10. There was no testimony about what occasioned these lost wages.

We have no information about the age of Huddleston's victim; thus, we have no indication of her potential involvement in the development of Huddleston's prosecution. Here, the investigation officer found K.S. to not be competent as a witness, and the record indicates no involvement by K.S. in the State's prosecution. While it may be true that both Smith and K.S.'s stepmother felt it appropriate and desirable that they attend and observe the trial, the evidence does not reflect a legal necessity for their attendance. Smith, the father, testified—but only to verify that based upon the report to him by Morris, he had contacted the police. Thus, his testimony was not required in order for the State to prove its case or that his presence was required for any other court proceedings. Dr. Robb, a psychologist, testified at trial that she had counseled K.S. on seven occasions after September 10, 2003, and that

Smith "brought K." and "was present" for those "counseling sessions." (Tr. 249). However, there is no documentation in the record before us that the lost wages claimed by Smith were for his work absences occasioned by the counseling sessions. Further, there is nothing whatsoever in the record to indicate any basis for K.S.'s stepmother having had to miss work. If there was additional documentation presented to the trial court in this regard, the State had the option—which it exercised in *Huddleston*—to provide it in an Appendix. Based upon the record before us, we conclude that the trial court abused its discretion when it ordered Cooper to pay restitution to K.S.'s father and stepmother for their claimed lost wages.

▪▪▪ Finally, Cooper asks that we exercise our authority under Indiana Appellate Rule 7(B) to find a sentence "inappropriate in light of the nature of the offense and the character of the offender." Specifically, she argues that the term of her sentence requiring her to pay a fine of $2,500.00 is "inappropriate." The State argues that because the statute authorizes imposition of a fine up to $10,000 upon a person's conviction for a class D felony, *see* I.C. § 35–50–2–7(a), the fine is within the statutory framework and should be affirmed as "not inappropriate following the jury's verdict finding [Cooper] guilty of battering her four (4) year old son." State's Br. at 12. We agree with Cooper.

Interestingly, we find a nearly complete dearth of authority on the issue of a fine imposed as part of a sentence.[4] Therefore, our analysis is not by analogy to previous cases but rather by consideration of the facts in this case.

Before sentencing, the trial court was informed that Cooper had lost her job as a nursing assistant because of her conviction. Subsequent to its imposition of the sentence, the trial court considered Cooper's request for the appointment of appellate counsel. Cooper testified that she had no money to make either her house or car payments. The trial court proceeded to appoint counsel for an appeal. Nevertheless, it did not revisit its order that Cooper pay a fine of $2,500.00.

We fail to see any basis for the imposition of a fine in the amount of $2,500.00 based upon the circumstances herein. There is no evidence that Cooper can now or will in the immediate future be able to pay the fine.[5] She must pay court costs and the fees required for probation. The State observes that because Cooper "has not been imprisoned for not paying the fine, she has not suffered prejudice." State's Br. at 13. However, failure to pay the fine could seriously jeopardize the possibility that Cooper's conviction might in the future be reduced to a class A misdemeanor. *See* I.C. § 35–50–2–7(b). The trial court had stated it would consider "a motion for that at the end of probation." (Sent. Tr. 13). Further, the statute provides that "whenever the court imposes a fine, it *shall conduct a hearing to deter-*

---

4. In 1898, after being convicted of bigamy, Williams Hicks appealed his sentence: "punishment fixed at a fine of one dollar and confinement in the jail of the county for three months." *Hicks v. State*, 150 Ind. 293, 50 N.E. 27 (1898). In affirming the sentence as consistent with the current statute, the opinion did not consider the appropriateness of the fine.

5. The record contains a letter written by Cooper to the trial court one month after sentencing. She asserts that after her conviction, she was "unable to get work for the first time in ten years," and that after "put[ting] in job applications for a month, . . . because of [her] felony [she] did not get one phone call for an interview." (App.160).

*mine whether the convicted person is indigent."* I.C. § 35–38–1–18(a) (emphasis added). Here, the trial court held no such hearing.

Cooper committed acts that constitute battery upon a child, and for those acts she was convicted of a class D felony. She was sentenced to serve 60 days executed for the crime, and she will have to complete an extended period of probation. We find that to add to this punishment a fine of $2,500.00 in the circumstances presented herein is to impose an "inappropriate" sentence. Ind.App. R. 7(B). Accordingly, we remand for the trial court to either (a) hold a hearing to determine whether Cooper is indigent and, if not, consider the facts concerning what a reasonable fine would be, or (b) vacate the order that Cooper pay a $2,500.00 fine.

Affirmed in part, reversed and remanded in part.

MATHIAS, J., and CRONE, J., concur.