# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 14 2018, 5:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Charisse E. Taylor,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | November 14, 2018<br><br>Court of Appeals Case No.<br>18A-CR-543<br><br>Appeal from the Rush Superior Court<br><br>The Honorable Brian D. Hill, Judge<br><br>Trial Court Cause No.<br>70D01-1701-F4-64 |

**Shepard, Senior Judge.**

[1]     Charisse Taylor drove Kenneth Lewis to Rushville, Indiana, where she and

Lewis were involved in a drug deal with an undercover police officer. She

appeals her convictions of dealing in a narcotic drug (heroin) in an amount greater than one gram but less than five grams, a Level 4 felony;[1] and dealing in cocaine, a Level 5 felony.[2] We affirm.

# Issues

Taylor raises three issues, which we restate as:

    I.     Whether the trial court's jury instruction on accomplice liability was fundamentally erroneous;

    II.    Whether the prosecutor engaged in misconduct amounting to fundamental error; and

    III.   Whether there is sufficient evidence to sustain her convictions.

# Facts and Procedural History

Detective Alex Shaver of the Rushville Police Department was investigating Kenneth Lewis for dealing in controlled substances. On January 17 and January 20, 2017, he purchased controlled substances from Lewis while working undercover. On both occasions, the transaction occurred while the two men sat in a tan Saturn automobile at a CVS store in Rushville. Lewis,

---

[1] Ind. Code § 35-48-4-1 (2016).

[2] Ind. Code § 35-48-4-1.

who lacked an Indiana driver's license, was driven to the CVS store on both days by another person who is not otherwise involved in the case.

[4] Shaver and Lewis later arranged for another transaction, to occur at the Rushville CVS on January 25, 2017. Lewis promised to sell Shaver three grams of heroin for $300 and one gram of cocaine for $100. Lewis told Shaver he would need an additional $40 to compensate his driver for expenses and for taking "time off work." Tr. Vol. II, p. 16.

[5] Taylor and Lewis had known each other for about ten years and had met through motorcycle clubs. They purportedly agreed she would drive him to a casino in Shelbyville, Indiana on January 25, 2017. Taylor drove Lewis' car, a tan Saturn. They drove east on Interstate Highway 74 from Indianapolis, passing the exit for the casino and a second exit before taking an exit at Rushville and driving into town. It was a twenty-minute drive from the interstate exit to Rushville.

[6] Taylor and Lewis arrived at the CVS at 2:59 p.m. Shaver was wearing street clothes and had been watching for them from a nearby gas station. Other officers were watching nearby. Taylor pulled into the parking lot and turned "very abruptly" before coming to a stop across two parking spaces. Id. at 17. Shaver activated recording and transmitting equipment on his person and rode over to the car on a bicycle. He then got into the back seat of the car.

[7] Taylor was in the driver's seat, and Lewis was in the front passenger's seat. They both appeared "very anxious." Id. at 18. Shaver asked them to park the

car more neatly. Lewis refused and asked Shaver to hurry up with the transaction. He said there was a police officer parked on the other side of the store. By coincidence, a state trooper was in fact parked on the other side of the CVS. Taylor "look[ed] around in a manner which made it appear she was looking around for the law enforcement officer or any other law enforcement officer." *Id.* She also looked at Shaver.

[8] Shaver counted out $440 in cash. He had previously photocopied the bills for tracking purposes. Shaver handed the money to Lewis as he said, "One hard. Three-forty." *Id.* at 27. "Hard" is a slang term for crack cocaine, and Shaver was communicating that $100 of the money was for that substance. "Three-forty" was a reference to the heroin and the driver's expenses. Lewis gave him a cigar package in return. Shaver felt the package and discovered "two round objects that appeared to be consistent with packaged narcotics." *Id.* at 20. Lewis counted the money, agreed the amount was correct, and told Shaver to "Hurry up." *Id.*

[9] Shaver exited the vehicle and spoke into his microphone, advising his fellow officers the buy had been completed and Lewis had a new driver. Taylor drove away, but other officers stopped the car and arrested her and Lewis.

[10] The officers took Taylor to the county jail. During the drive, Taylor told one of the officers she was in Rushville because she had gotten lost. A jail matron searched Taylor and discovered money in her bra. It was later determined the money was the $440 that Shaver had given Lewis. Subsequent testing also

revealed Lewis had handed Shaver .169 grams of cocaine and 1.18 grams of heroin mixed with fentanyl.

[11] Two officers interviewed Taylor at the jail. She initially explained she was driving Lewis to the casino but arrived in Rushville by accident, having missed the correct exit. She also told the officers she drove to the CVS as they looked for a gas station to use the bathroom, but she instead turned around and was heading back to the interstate when the officers stopped her. Taylor denied talking with anyone else at the CVS and claimed not to have noticed the gas station across the street from the CVS.

[12] One of the officers pointed out Taylor had passed two interstate exits before leaving the highway at the Rushville exit. The officer further said he knew she had stopped at the CVS and had "met with one of our local dopers." *Id.* at 59. Taylor then conceded Lewis had directed her to pass the exit for the casino and drive to the CVS in Rushville. She further stated someone got in the car at the CVS and spoke with Lewis. Taylor claimed she did not look at the person and did not hear his discussion with Lewis because she was looking at her phone. She swore "on [her] children" she never looked at the person who got into the car. *Id.* at 62.

[13] Taylor further stated Lewis did not hand her any money or drugs after the other person left the car. She next claimed she had $400 in cash from "[o]ther sources." *Id.* at 66. Upon further questioning, Taylor admitted Lewis had given her the cash as they were leaving the CVS lot.

The State charged Taylor with dealing in a narcotic drug in an amount greater than one gram but less than five grams, dealing in cocaine, and maintaining a common nuisance, a Level 6 felony. The State dismissed the count of maintaining a common nuisance prior to trial. The jury deadlocked during deliberations. After discussions with the parties, the trial court allowed the parties to present additional arguments to the jury and then reread the instructions. The jury determined Taylor was guilty of the two dealing offenses, and this appeal followed.

# Discussion and Decision

## I. Jury Instruction – Accomplice Liability

Taylor claims the trial court's jury instruction on accomplice liability "was inadequate to properly inform the jury on the law." Appellant's Br. p. 15. She concedes she did not object to the instruction at trial and must establish on appeal that the instructional error, if any, was fundamental.

A claim that has been waived by a failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines fundamental error occurred. *Brown v. State*, 929 N.E.2d 204 (Ind. 2010). The "fundamental error" exception is extremely narrow and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. *Mathews v. State*, 849 N.E.2d 578 (Ind. 2006).

[17]    In reviewing a trial court's decision to give or refuse tendered jury instructions, this Court considers:  (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions that are given.  *Chambers v. State*, 734 N.E.2d 578 (Ind. 2000).  In determining whether fundamental error occurred in the giving of instructions, we consider all the relevant information provided to the jury, including closing arguments and other instructions.  *Davis v. State*, 835 N.E.2d 1102 (Ind. Ct. App. 2005), *trans. denied*.

[18]    The trial court instructed the jury on accomplice liability as follows:

> A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense.  A person may be convicted of aiding, inducing, or causing an offense even if the other person has not been prosecuted for the offense, has not been convicted of the offense, or has been acquitted of the offense.

Appellant's App. Vol. 2, p. 88; Tr. Vol. II, p. 138.

[19]    The instruction closely tracks the language of the statute that governs accomplice liability.  *See* Indiana Code § 35-41-2-4 (1977).  As a general matter, it is not error to instruct the jury consistent with applicable statutes.  *Wooley v. State*, 716 N.E.2d 919 (Ind. 1999).

[20]    Taylor argues the instruction was defective because it failed to inform the jury that presence at the scene of a crime and failure to oppose the commission of a

crime are insufficient to establish accomplice liability. Taylor's issue was addressed by other instructions. Specifically, the trial court read the charging information to the jury in the final instructions, clarifying the State was obligated to prove Taylor "delivered" the heroin and cocaine. Tr. Vol. II, p. 160. The jury was thus informed Taylor had to take an affirmative act to assist in commission of the offenses. Under these circumstances, we cannot conclude the accomplice liability instruction blatantly violated basic principles, and we decline to address her waived claim of instructional error. *See Davis*, 835 N.E.2d at 1110 (any error in failing to give instruction to jury was not fundamental, considering jury instructions as a whole).

## II. Prosecutorial Misconduct

Taylor argues the prosecutor engaged in misconduct during the arguments the parties presented after the jury deadlocked. She concedes she did not object to the prosecutor's argument and must demonstrate the misconduct, if any, resulted in fundamental error.

In reviewing a claim of prosecutorial misconduct, we must determine (1) whether misconduct occurred, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been otherwise subjected. *Ryan v. State*, 9 N.E.3d 663 (Ind. 2014). A prosecutor has the duty to present a persuasive final argument and thus placing a defendant in grave peril, by itself, is not misconduct. *Id.*

[23]    When a claim of prosecutorial misconduct has been waived for failure to properly raise the claim in the trial court, the defendant must establish not only the grounds for prosecutorial misconduct but also that the misconduct constituted fundamental error. *Id.*

[24]    After the jury retired to deliberate, the jurors sent a note to the trial court stating: "Clarify, um, if the charge is knowingly delivered cocaine, does that mean she, the Defendant, has to know the package was cocaine?" Tr. Vol. II, p. 149. After discussing the note with the parties, the court sent the jury a note stating, "The Court's instructions are your best source in determining the law." *Id.* at 150. Later, the jury reported to the trial court it was deadlocked on both counts, and the judge brought the jury into the courtroom. The foreperson reported the jury needed more information on a question of law:

> Specifically, our, our concern is that in both counts the, the idea of knowingly or intentionally, it is concerning to several members of the Jury that that means that the statute means the, the delivery must also include knowing the content of the package. If the statute is to be read that there does not need to be knowledge of the content. Knowledge that it was cocaine or knowledge that it was heroin, simply the act of delivery, if the Indiana State has that as the application we would be able to have a completely different finding. But as it states certain Jurors are concerned that there has not been proof established that there was knowledge of the content.

*Id.* at 152.

[25] The trial court and the parties agreed the parties would provide additional argument, five minutes each, followed by the court rereading the instructions to the jury. The prosecutor told the jury the following:

> It's been a long day for everybody. I'm hoping this will help you out. I know you have your instructions and the Judge is gonna read that to you again and I understand why there might be some confusion when you're looking at the charge of dealing on both of these counts. And, saying to convict the Defendant, saying it has to prove each of the following elements beyond reasonable doubt. The Defendant, Charisse Taylor, we got that taken care of. Knowingly or intentionally, delivered. Delivery of heroin. We proved that it was heroin. The State Lab says it was. The State Police, forensic scientist. And the amount delivered weighing at least 1 gram but less than 5 grams. Then not, there's no way, I'm never going to be able to prove, in most cases, that a defendant knew how much the actual weight was. The State Police Lab's gonna do that. That's not a specific intent element. And I don't see anywhere in here that would require knowing or intentional on the heroin itself, the cocaine itself, the weights or anything else. Knowingly or intentionally delivered. And I based that on reading the actual statute that she is charged with. Dealing in Cocaine or a Narcotic Drug. It's the same statute. One part of it deals with cocaine, one part of it deals with heroin or any other narcotic drug. Uh, and it starts off saying subsection a, a person who, and then under that there's a subsection says, "knowingly or intentionally:" under that there are four subsections under that subsection (a)(1). "Knowingly or intentionally manufactures, finances the manufacture of, delivers, or finances the delivery of." Those are the elements that fall under "knowingly or intentionally." The next line is, "cocaine or a narcotic drug, pure or adulterated, classified in schedule 1 or 2" And then as you go down it says if it's more than 1 gram and less than 5, it says Level Felony [sic] if it's more than 5 grams it's a different level felony, it's below that, falls under original one. So

knowing that that's how the statutes written, I think that will help you out.  The other thing I want to point out, maybe I didn't make this clear when I was arguing it before.  But the aiding and abetting statute that you have, I keep calling it that, it's, uh, a person who, knowingly or intentionally, aids, induces, or causes another person to commit an offense, commits that offense.  If you determine that Mr. Lewis had the intent to deliver cocaine and heroin to Alex Shaver, then you determine that Charisse Taylor aided him, then she's guilty of that crime.  Same thing with cocaine, heroin.  And as I said before in my prior closing, I don't know if that helps at all either, but you can infer intent and knowledge from somebody's behavior, the conduct, and all the circumstances.  All the lies she told, the information she gave the police that was wrong, the actions she took.  There's no doubt that cocaine and heroin was delivered in this case.  There's no doubt that she drove that [sic] to Rushville.  There's no doubt that she sat there while it was going on.  I'm asking you to find her guilty of both counts.  Thank you.

*Id.* at 156-57.  Next, Taylor presented her additional argument, and the trial court reread the instructions before the jury retired to continue deliberating.

[26]     Taylor contends the prosecutor misstated the law by arguing "to the jury that Taylor's presence at the transaction and mere acquiescence while the transaction occurred were sufficient to support her conviction."  Appellant's Br. p. 22.  We disagree.  The prosecutor clarified the jury had to determine she "aided" Lewis in delivering the drugs and further identified several "actions" she took that proved she actively assisted Lewis in committing the offenses.  Tr. Vol. II, p. 157.  Further, the prosecutor never claimed Taylor's mere presence or failure to oppose the transaction would be sufficient to hold her criminally liable.

Next, Taylor claims the prosecutor "engaged in misconduct when he argued to the jury he did not have to prove Taylor knew the items being dealt were cocaine and heroin." Appellant's Br. p. 22. If the prosecutor misstated the law, the misstatement did not rise to the level of fundamental error. During closing arguments, the prosecutor acknowledged jurors might ask themselves, "These drugs were in a Swisher Sweet package, so, if she didn't seem [sic] them, how could she know it was cocaine and heroin?" Tr. Vol. II, p. 126. The prosecutor further told the jurors they had to determine "whether Miss Taylor had knowledge or intent to participate in this drug deal, to aid or assist Mr. Lewis in this drug deal." *Id.* The prosecutor then discussed Taylor's conduct in detail, including her repeated lies during the police investigation, and concluded, "[s]he knowingly and intentionally delivered drugs to Alex Shaver, cocaine and heroin." *Id.* at 129. Finally, in its final instructions the court instructed jurors they could not find Taylor guilty of the dealing charge unless they concluded she "knowingly or intentionally" delivered heroin and cocaine. *Id.* at 137-38. There was no fundamental error on this point.

## III. Sufficiency of the Evidence

Taylor claims the State failed to present sufficient evidence to convict her. In addressing the sufficiency of the evidence, we will affirm the conviction if, considering only the probative evidence and reasonable inferences supporting the verdict, without weighing or assessing witness credibility, a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. *Enamorado v. State*, 534 N.E.2d 740 (Ind. 1989).

[29] To convict Taylor of dealing in a narcotic drug (heroin) in an amount greater than one gram but less than five grams, the State was required to prove beyond a reasonable doubt that Taylor (1) knowingly or intentionally (2) delivered (3) heroin (4) in the specified amount. Ind. Code § 35-48-4-1. Similarly, to convict Taylor of dealing in cocaine, the State was required to prove beyond a reasonable doubt that Taylor (1) knowingly or intentionally (2) delivered (3) cocaine. *Id.* Taylor does not dispute Lewis sold heroin and cocaine to an undercover officer, but she claims she did not assist Lewis in the transaction.

[30] "A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense . . . ." Ind. Code § 35-41-2-4. Under this statute, an individual who aids another person in committing a crime is as guilty as the actual perpetrator. *Schaaf v. State*, 54 N.E.3d 1041 (Ind. Ct. App. 2016). A person can be convicted as an accomplice even if the person did not participate in each and every element of the crime. *Id.* We consider the following factors in determining whether a defendant aided another in the commission of a crime: (1) presence at the scene of the crime; (2) companionship with another engaged in a crime; (3) failure to oppose the commission of the crime; and (4) the course of conduct before, during, and after the occurrence of the crime. *Id.*

[31] Taylor was present during the drug deal with her companion, Lewis. We further conclude there is ample evidence from which the jury could have determined beyond a reasonable doubt that she assisted Lewis in the deal. During the transaction at CVS, Taylor looked around for police officers and

also looked at Shaver. Shaver counted the buy money in her presence and used a slang term for crack cocaine during the transaction. As she drove away, Taylor received the money from Lewis and hid it in her bra. After her arrest she repeatedly lied to the officers, initially claiming she got lost while driving Lewis to the casino, then further claiming she and Lewis had not met anyone at CVS and that Lewis had not given her the money that was later found in her bra. Taylor's claim that she did not look at Shaver and was merely nervous while being questioned are requests to reweigh the evidence. *See id.* at 1044 (evidence sufficient to convict Schaaf as an accomplice in dealing heroin; Schaaf drove a friend to gas station, allowed a confidential informant to enter his car, and witnessed the deal).

# Conclusion

[32] For the reasons stated above, we affirm the judgment of the trial court.

[33] Affirmed.

Baker, J., and Mathias, J., concur.