


FILED
Mar 27 2025, 9:15 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Court of Appeals of Indiana

Marcos Alan Salinas, IV,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

March 27, 2025

Court of Appeals Case No.
24A-CR-1966

Appeal from the Carroll Circuit Court

The Honorable William C. Menges, Jr., Senior Judge

Trial Court Cause No.
08C01-2209-F1-1

---

**Opinion by Judge Tavitas**
Chief Judge Altice and Judge Brown concur.

**Tavitas, Judge.**

## Case Summary

[1] Following a jury trial, Marcos Salinas appeals his convictions for child molesting, a Level 1 felony; child molesting, a Level 4 felony; and intimidation, a Class A misdemeanor. Salinas argues that the trial court abused its discretion by: (1) denying his request to depose the child victim; (2) admitting certain evidence; (3) permitting the child victim to testify while holding a stuffed animal; (4) refusing to permit him to refresh a witness's memory using a recording of the child's forensic interview; and (5) refusing one of Salinas' proposed jury instructions.

[2] We conclude the following: (1) the trial court did not abuse its discretion by denying Salinas' request to depose the child victim; (2) the trial court abused its discretion by admitting certain items of evidence, but the error was harmless, and the trial court did not abuse its discretion by admitting other challenged evidence; (3) the trial court did not abuse its discretion by permitting the child victim to testify while holding a stuffed animal; (4) the trial court erred by refusing to permit Salinas to refresh a witness's memory using the recording of the child's forensic interview, but the error was harmless; and (5) the trial court did not abuse its discretion by refusing Salinas' proposed jury instruction. We, accordingly, affirm.

## Issues

[3] Salinas raises five issues, which we restate as:

I. Whether the trial court abused its discretion by denying Salinas' request to depose the child victim.

II. Whether the trial court abused its discretion by admitting certain evidence.

III. Whether the trial court abused its discretion by permitting the child victim to testify while holding a stuffed animal.

IV. Whether the trial court erred by refusing to permit Salinas to refresh a witness's memory using the recording of the child's forensic interview.

V. Whether the trial court abused its discretion by refusing Salinas' proposed jury instruction.

## Facts

[4] L.R. was born in 2009 to her biological father and R.O. ("Mother"). After the death of L.R.'s biological father, Mother dated Salinas and, in August 2019, when L.R. was nine years old, Salinas began residing with Mother in Frankfort. L.R. lived primarily with her paternal grandparents for two years and attended school in Zionsville. In 2021, L.R. moved back in with Mother and continued to stay with her paternal grandparents every other weekend. Salinas would watch L.R. and her sisters during the day while Mother worked. In July 2021, when L.R. was eleven years old, Mother and Salinas moved to a house in Rockville, and L.R. began seeing her paternal grandparents less frequently.

[5] A couple of weeks after the move, Salinas was sitting next to L.R. on the couch while Mother was at work. Salinas rubbed L.R.'s breast on the outside of her clothing and then put his hand "up [her] shirt" and continued rubbing her breast. Tr. Vol. IV p. 119. After several minutes, Salinas put his hand inside of

L.R.'s shorts and "rubbed the outside of [L.R.'s] vagina" for several minutes. *Id*. at 120. L.R. told Salinas to stop, but he ignored her.

[6] Salinas would touch L.R. in this manner "[a]t least two times a week" when Mother was not home. *Id*. at 121. L.R. did not report the touching because Salinas "threatened" that he would "harm [her] mom and [her] grandpa" if she did so. *Id*. Around this time, L.R.'s paternal grandfather ("Grandfather") noticed that L.R.'s demeanor was different when she would visit.

[7] At some point after the touching began, Salinas asked L.R. to "give him head." *Id*. at 122. L.R. did not know what that meant, and Salinas told her, "[I]t's where you suck his penis." *Id*. at 123. L.R. was "shocked" and left to go upstairs. *Id*. Then, in September 2021, while L.R.'s sisters were upstairs, Salinas was again sitting with L.R. on the couch and touching her over and under her clothes when he "grabbed" L.R.'s wrist and "pulled [her] into the kitchen." *Id*. at 124. Salinas "forced [L.R.] down on [her] knees" by pressing on her shoulder. *Id*. L.R. tried to stand up, but Salinas "slapped" her in the face. *Id*. Salinas "pushed" L.R.'s head down to his penis and "st[u]ck" his penis in L.R.'s mouth. *Id*. Salinas ejaculated onto the carpet and cleaned it up with a towel. Salinas told L.R., "You promise not to tell anyone, right? . . . You know what will happen." *Id*. at 125.

[8] After this occasion, Salinas would force L.R. to perform oral sex on him approximately twice per week. The most recent occasion was the "worst time" for L.R. and occurred when she was twelve years old. *Id*. Salinas came into

L.R.'s room and "dragged" her by the wrist into his bedroom, where he forced her onto her knees and "forced [her] head onto his penis." *Id*. at 126-27.

[9] Mother did not directly observe any inappropriate touching by Salinas, but she testified that, in February 2022, she came downstairs in the morning and saw Salinas and L.R. "very close on the couch together." *Id*. at 72. Upon seeing Mother, L.R. "jumped away from [Salinas] and looked very scared," and Salinas began "acting very differently." *Id*. Mother asked what Salinas and L.R. were doing, and Salinas accused Mother of suggesting he had done something inappropriate. Salinas then "[y]elled" at L.R. to come into his bedroom and "intimidate[d]" L.R. "about how [Mother] was saying that inappropriate things were happening." *Id*. at 74.

[10] On May 5, 2022, Grandfather received an anonymous call from a woman who turned out to be Salinas' mother. Salinas' mother provided information that led Grandfather to believe that Salinas was sexually abusing L.R. Grandfather filed a report with the Department of Child Services ("DCS"), and a DCS caseworker interviewed L.R. at her school. The caseworker asked L.R. about sexual abuse in the home, but L.R. "lied and said that it wasn't happening." *Id*. at 132. L.R. lied because she "didn't want [her] family to get hurt." *Id*.

[11] DCS also interviewed Mother that day at the home. Although Mother asked Salinas to leave, he returned in the middle of the interview. DCS informed Mother that they unsubstantiated the report because L.R. did not report anything at school. When L.R. came home later that day, Salinas said that he

was "proud" of L.R. and that she showed "loyalty," which stood out to Mother because "it made it seem like he was proud that she was lying." *Id*. at 78.

[12] Several weeks later, on May 22 or 23, 2022, Salinas' mother contacted Grandfather again and provided screenshots of text messages between L.R. and Salinas' daughter from a different relationship, A.S., who was friends with L.R. Grandfather found the text messages "concerning" and decided he would speak with L.R. regarding abuse by Salinas. *Id*. at 98.

[13] L.R. visited Grandfather several days later on May 30, 2022. Grandfather asked L.R. "if all the bad things were true," and L.R. began to cry. *Id*. at 99. Grandfather was concerned about L.R.'s safety and asked her to write a letter to Mother explaining "why she didn't want to come home." *Id*. at 101. L.R. wrote to Mother: "[Salinas] has made me touch him inoropriet [sic] places and he has touched me in inoropriet [sic] places. He has made me put my mouth on his private part." Ex. Vol. p. 6. Grandfather read the letter and filed another report with DCS. The next day, L.R. participated in a forensic interview at the Heartford House.[1] L.R. has remained living with her paternal grandparents since writing the letter.

[14] On September 23, 2022, the State charged Salinas with: Count I, child molesting, a Level 1 felony; Count II, child molesting, a Level 4 felony; and Count III, intimidation, a Class A misdemeanor. On February 21, 2023,

---

[1] Heartford House is a child advocacy center located in Lafayette.

Salinas filed a motion requesting permission to depose L.R. Salinas argued that "exigent circumstances" and the "interest of justice" justified the deposition because the first DCS report was unsubstantiated and L.R. had "a motive to fabricate the allegations due to her vocal desire to reside with her paternal grandparents." Appellant's App. Vol. II p. 27. After a hearing, the trial court entered an order denying Salinas' motion.

[15] On November 1, 2023, Salinas filed a motion in limine, in which he sought to preclude the admission of evidence regarding, among other things, DCS investigating whether Salinas "provid[ed]" marijuana to L.R. *Id.* at 36. Without holding a hearing, the trial court granted the motion in limine that same day.[2]

[16] The jury trial commenced in June 2024 when L.R. was fourteen years old.[3] Salinas did not testify. Early in the trial, the trial court indicated that it was reconsidering portions of Salinas' previously granted motion in limine. The trial court ruled that evidence that Salinas provided L.R. with marijuana might be admissible "depend[ing] upon the nature of the evidence." Tr. Vol. IV pp. 32, 35. Mother testified that the first DCS report alleged that Salinas "was sexually abusing [L.R.], and was smoking weed with her." *Id.* at 76. The testimony was admitted over Salinas' objection.

---

[2] A different judge presided over the jury trial.

[3] Before the trial commenced, Salinas renewed his motion to depose L.R., which the trial court again denied.

Grandfather testified regarding the phone calls and meetings with Salinas' mother and the letter written by L.R. The State called Carroll County Sheriff Tony Liggett, the lead detective on the case, to testify regarding L.R.'s forensic interview. Sheriff Liggett testified that, during the forensic interview, L.R. reported only one incident of oral sex.

L.R. testified and recounted that Salinas touched her over and under her clothing, forced her to perform oral sex on several occasions, and threatened to hurt Mother and Grandfather. She further testified that Salinas would "get physical" when disciplining L.R. and her siblings. *Id*. at 161. L.R.'s letter and her text messages with A.S. were admitted into evidence over Salinas' objection. On cross examination, Salinas questioned L.R. regarding her trial testimony that Salinas forced her to perform oral sex on several occasions, whereas she reported to the forensic interviewer that oral sex occurred only once. L.R. answered that she did not recall the forensic interview but would be "surprised" if she reported that oral sex occurred only once. *Id*. at 148.

L.R. gave her testimony while holding a stuffed animal, which the trial court later described as a stuffed dinosaur "approximately two feet in length, and approximately six inches in diameter." *Id*. at 162. During a sidebar after L.R.'s testimony, Salinas referenced an "off the record" objection he previously made regarding L.R. testifying with the stuffed animal, which Salinas sought to "preserve[.]" *Id*. Salinas argued that the stuffed animal "only served to color the Jury's mind and prejudice them as to the age of the child and vulnerability." *Id*. The trial court indicated that it had previously overruled the objection.

[20] Jennifer Bushore-Berry, who conducted L.R.'s forensic interview, testified that, based on research in the field, "less than 10% of children lie about sexual abuse." *Id.* at 174. The trial court admitted the testimony over Salinas' objection. On cross-examination, Salinas' counsel sought to question Bushore-Berry about L.R.'s statements during the forensic interview, but Bushore-Berry testified that she did not recall the forensic interview. Salinas' counsel then asked whether watching a recording of the forensic interview would refresh Bushore-Berry's memory. The trial court, however, gave Salinas the option of either entering the recording into evidence or "mov[ing] on," and Salinas indicated he did not wish to admit the recording into evidence. *Id.* at 179. Salinas then questioned Bushore-Berry regarding L.R.'s statements during the interview, which Bushore-Berry was unable to recall.

[21] During the final jury instructions conference, Salinas proffered a pattern instruction directing the jury that it could consider a witness's prior inconsistent statements in deciding the value of the testimony of the witness. The trial court refused the instruction. The jury found Salinas guilty as charged. The trial court sentenced Salinas to a total of fifty-seven years in the Department of Correction. Salinas now appeals.

## Discussion and Decision

### I. Child Deposition Statute

[22] Salinas first argues that the trial court abused its discretion by denying his motion to depose L.R. Depositions of child victims of sex offenses are

governed by the Child Deposition Statute, Indiana Code Section 35-40-5-11.5. Discussing this statute in *Church v. State*, 189 N.E.3d 580, 585 (Ind. 2022), our Supreme Court noted that:

> [b]ecause trial courts have broad discretion over discovery matters, our review over these matters is typically limited to determining whether the trial court abused its discretion. However, when a trial court's ruling involves a pure question of law, such as the interpretation or constitutionality of a statute, our standard of review is de novo.

(quotations omitted). We, thus, interpret the Child Deposition Statute's terms de novo, and we review the trial court's ruling denying Salinas' motion for an abuse of the trial court's discretion.

[23] The Child Deposition Statute provides, in relevant part:

> (a) This section applies only to a criminal case involving a child less than sixteen (16) years of age who is the victim or alleged victim of a sex offense.
>
> * * * * *
>
> (c) A defendant may depose a child victim only in accordance with this section.
>
> (d) A defendant may not take the deposition of a child victim unless the defendant contacts the prosecuting attorney before contacting the child, and one (1) or more of the following apply:
>
> * * * * *

**(3) The court authorizes the deposition after finding, following a hearing under subsection (g), that the deposition is necessary:**

> **(A) due to the existence of extraordinary circumstances; and**
>
> **(B) in the interest of justice.**

* * * * *

**(g) The court may not authorize the deposition of a child victim under subsection (d)(3) unless the defendant establishes by a preponderance of the evidence that the deposition is necessary:**

> **(1) due to the existence of extraordinary circumstances; and**
>
> **(2) in the interest of justice.**

* * * * *

I.C. § 35-40-5-11.5 (emphasis added). Here, Salinas argues that the trial court abused its discretion by denying his motion to depose L.R. because, pursuant to subsection (d)(3), the deposition was "necessary . . . due to the existence of extraordinary circumstances" and "in the interest of justice."

[24] We have held that the Child Deposition Statute "prohibits the ability of criminal defendants to depose the victim of a sex offense if the victim is less than sixteen years old, unless certain conditions are met." *Rosenbaum v. State*, 193 N.E.3d 417, 426 (Ind. Ct. App. 2022), *trans. denied*. And our Supreme

Court has held that the statute is a substantive, rather than a procedural, statute because it creates a "substantive right" for child victims of sex offenses to avoid deposition and places "a limitation on the substantive rights of defendants" to take such depositions. *Church*, 189 N.E.3d at 591.

[25] No published case, however, has interpreted the meaning of "extraordinary circumstances" or "the interest of justice" under the statute. In interpreting a statute,

> [W]e begin with the statutory language itself. We read the words in their plain and ordinary meaning, taking into account the structure of the statute as a whole. We presume the General Assembly intended for the statutory language to be applied in a logical manner consistent with the statute's underlying policy and goals.

*Spells v. State*, 225 N.E.3d 767, 772 (Ind. 2024) (citations and internal quotations omitted).

[26] The plain meaning of "extraordinary" is "[b]eyond what is usual, customary, regular, or common[.]" *Extraordinary*, BLACK'S LAW DICTIONARY (12th ed. 2024); *see also State v. Collier*, 61 N.E.3d 265, 268-69 (Ind. 2016) (finding "extraordinary or exceptional circumstances" supported granting Trial Rule 60(B)(8) motion for relief from judgment to permit defendant to seek post-conviction relief where trial court failed to refer prior petition to State Public Defender as required by Post-Conviction Rules and defendant "suffered from cognitive or mental deficiencies"); *In re Adoption of O.R.*, 16 N.E.3d 965, 971-72 (Ind. 2014) (finding that, where biological father failed to file a timely appeal,

"extraordinarily compelling reasons" supported "restor[ing]" the right to appeal due, principally, to the appeal concerning protected Fourteenth Amendment rights).

[27] Based on the plain meaning of the word "extraordinary," we are not persuaded that extraordinary circumstances existed such that the trial court abused its discretion by denying Salinas' motion to depose L.R. Salinas argues that extraordinary circumstances existed because: (1) L.R. did not report inappropriate touching during DCS's first investigation; (2) "unfounded allegations were made against Salinas regarding another child"[4]; (3) L.R. had a motive to fabricate the allegations in order to remain with her paternal grandparents; and (4) Salinas faced a lengthy sentence if convicted. Appellant's Br. p. 24.

[28] As this Court is all too familiar, however, these sorts of circumstances are unfortunately common in child molestation cases. Child victims often recant allegations, fail to remember all the facts and circumstances, or fail to report allegations altogether. We, thus, conclude that Salinas did not prove by a preponderance of the evidence that extraordinary circumstances existed such

---

[4] Salinas' biological daughter, A.S., appears to have reported and later recanted allegations of inappropriate touching by Salinas.

that deposition of L.R. was required, and the trial court, therefore, did not abuse its discretion by denying Salinas' motion to depose her.[5]

## II. Admission of Evidence

[29] Salinas argues that the trial court abused its discretion by admitting several pieces of evidence at trial. We review challenges to the admission of evidence for an abuse of the trial court's discretion. *Combs v. State*, 168 N.E.3d 985, 990 (Ind. 2021). We will reverse only where the decision is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. *Clark v. State*, 994 N.E.2d 252, 259-60 (Ind. 2013). "The effect of an error on a party's substantial rights turns on the probable impact of the impermissible evidence upon the jury in light of all the other evidence at trial." *Gonzales v. State*, 929 N.E.2d 699, 702 (Ind. 2010); *see* Ind. Trial Rule 61; Ind. Appellate Rule 66(A). The erroneous admission of evidence is harmless when we are persuaded that the jury's verdict was not "substantially swayed" by the erroneously-admitted evidence. *Lafayette v. State*, 917 N.E.2d 660, 666 (Ind. 2009). Erroneously-admitted evidence that is "cumulative of other evidence properly before the jury" constitutes harmless error. *Hoglund. v. State*, 962 N.E.2d 1230, 1240 (Ind. 2012).

---

[5] Because we determine that Salinas did not demonstrate that "extraordinary circumstances" supported deposition of L.R., we do not address whether deposition was "in the interest of justice."

### A. Evidence Rule 404(b)—DCS report alleging Salinas provided L.R. with marijuana

First, Salinas argues that the trial court abused its discretion by admitting Mother's testimony that DCS investigated a report that he provided L.R. with marijuana. Salinas argues that this evidence was inadmissible under Evidence Rule 404(b).

The testimony constitutes inadmissible "bad act" evidence under Evidence Rule 404(b). The error in admitting this evidence, however, was harmless based on the totality of the evidence presented at trial. L.R. testified in detail regarding Salinas' sex offenses and threats against her; L.R.'s letter reporting the allegations was admitted; Mother testified regarding circumstantial evidence that Salinas encouraged L.R. to lie to DCS; and Grandfather testified regarding changes in L.R.'s demeanor around the time the touching began. Moreover, DCS never substantiated the report that Salinas provided marijuana to L.R. We are not persuaded that the brief testimony regarding the marijuana "substantially swayed" the jury's verdict. *Lafayette*, 917 N.E.2d at 666.

### B. Hearsay—L.R.'s text messages with A.S.

Salinas next argues that the trial court abused its discretion by admitting the text messages exchanged between L.R. and A.S. because the text messages constitute inadmissible hearsay. In the text messages, L.R. wrote to A.S.: "[Salinas] said I shouldn't communicate with u cause u could show it as evidence and he would get in trouble[.]" Ex. Vol. p. 9. L.R. asked A.S. whether anyone had reported a "very bad situation" involving her and Salinas

because L.R. did not want Salinas to get mad at her. *Id*. at 10. A.S. texted that she "told about [A.S.'s own] situations but that's it." *Id*. L.R. then asked again if someone reported "[t]he very bad situation," and A.S. replied, "like I have many with you[.]" *Id*. at 11. A.S. also texted, "no one right now is communicating with [Salinas]"; "my mom is taking him to court over me"; and that A.S. was "scared to be hit or something[.]" *Id*. at 12-13.

[33] The text messages constitute inadmissible hearsay. *See* Evid. R. 801(c); 802. The error in the admission of the text messages, however, is harmless because the text messages are vague and cumulative of other evidence. L.R.'s challenged statements in the text messages—that Salinas would get mad if L.R. told A.S. about L.R.'s situation with Salinas—were merely cumulative of L.R.'s testimony that Salinas threatened L.R.

[34] Salinas contends that the messages suggested that he "molested" A.S., was "physically abusive" to her, and that his family did not speak with him. Appellant's Br. p. 29. But we are not convinced that A.S.'s vague reference to a "situation" would necessarily suggest to the jury that Salinas inappropriately touched A.S. And other evidence properly admitted at trial demonstrated that Salinas physically disciplined L.R. and her siblings and that Salinas' own mother met with Grandfather twice to encourage him to file a DCS report. A.S.'s text messages, thus, were cumulative of other evidence, and the admission of the text messages constitutes harmless error. *Hoglund*, 962 N.E.2d at 1240.

### C. Impermissible Vouching—Testimony that less than ten percent of children lie about sexual abuse

[35] Lastly, Salinas argues that the trial court abused its discretion by admitting Bushore-Berry's testimony that, based on research in the field, "less than 10% of children lie about sexual abuse." Tr. Vol. IV p. 174. Salinas argues that this testimony constitutes improper vouching.

[36] Evidence Rule 704(b) provides: "Witnesses may not testify to **opinions** concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; **whether a witness has testified truthfully**; or legal conclusions." (emphasis added). This rule prohibits "[v]ouching" for another witness because "[s]uch testimony invades the province of the jury in determining what weight to give a witness's testimony." *Henson v. State*, 237 N.E.3d 1160, 1165 (Ind. Ct. App. 2024) (citing *Gutierrez v. State*, 961 N.E.2d 1030, 1034 (Ind. Ct. App. 2012)), *trans. denied*.

[37] We recently noted in *Henson*, 237 N.E.3d at 1166, that "[t]his Court has repeatedly found no Rule 704(b) violation where a witness testified about how child sexual-abuse victims behave in general without making a statement about the specific victim." (collecting cases); *cf. Sampson v. State*, 38 N.E.3d 985, 991-92 (Ind. 2015) (holding testimony that a specific child victim was coached or showed signs of coaching constitutes impermissible vouching). Thus, the *Henson* court held that a detective's testimony regarding the reasons for delayed disclosure by child victims in general was admissible.

[38] A similar case, *Alvarez-Madrigal v. State*, 71 N.E.3d 887 (Ind. Ct. App. 2017), *trans. denied*, is particularly instructive here. In *Alvarez-Madrigal*, a pediatrician who worked on the hospital's child abuse protection team testified that "some statistics will quote that less than two to three children out of a thousand are making up [sexual abuse] claims." *Id*. at 891. The majority held that this testimony did not constitute improper vouching because the testimony was not "an opinion about, or related to" the victim's credibility, the truth of the allegations, whether the victim was coached, or whether the victim was a truthful person in general. *Id*. at 893. Rather, the testimony was a "general statistical statement [that] properly left the determination of [the victim's] credibility to the province of the jury." *Id*.

[39] We are persuaded that *Alvarez-Madrigal* represents the correct view that general statistics regarding child abuse victims' behaviors do not constitute improper vouching under Evidence Rule 704(b). Indeed, this view is supported by the plain language of the rule, which is limited to "opinions." Evid. R. 704(b). General statistics are not opinions, so Evidence Rule 704(b) simply does not apply to them.[6]

[40] Salinas relies on Judge Barnes' concurring opinion in *Alvarez-Madrigal*, in which Judge Barnes disagreed with the majority's conclusion that the testimony did

---

[6] The admissibility of such statistics will of course depend on whether they pass the tests of relevancy and probative value under Evidence Rules 401 and 403. But Salinas does not contend that the statistics here are inadmissible under those rules, and we, thus, do not address such determinations in this case.

not constitute improper vouching.[7] Judge Barnes concluded: "Even if [the] testimony was not directly tied to [the victim], what other conclusion could a jury draw from this testimony other than, 'there's a very small chance this child is making these things up'?" *Id.* at 897 (Barnes, J., concurring); *see also Henson*, 237 N.E.3d at 1167 (finding "merit" in Judge Barnes' concerns). But because statistical evidence does not constitute "opinion[]" testimony, it cannot constitute impermissible vouching under Evidence Rule 702(b). Because the testimony here concerned general statistics rather than an opinion, much less an opinion about L.R. specifically, the trial court did not abuse its discretion by admitting this evidence.

## III. Stuffed Animal

[41] Salinas argues that the trial court abused its discretion by permitting L.R. to testify while holding a stuffed animal. Salinas argues that "[p]ermitting a fourteen year-old who is the sole direct evidence of the crime to hold an item commonly associated with young children while testifying about child molesting unfairly prejudiced the jury and deprived Salinas of his right to a fair trial." Appellant's Br. p. 34.

[42] Our Supreme Court recognizes the "broad discretion" entrusted to our trial courts in "controlling trial proceedings." *Hancz-Barron v. State*, 235 N.E.3d

---

[7] Judge Barnes, however, agreed with the majority that the defendant failed to establish fundamental error and, thus, agreed to affirm the trial court's judgment. *Alvarez-Madrigal*, 71 N.E.3d at 896 (Barnes, J., concurring).

1237, 1245 (Ind. 2024) (citation omitted). "A trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law." *Abbott v. State*, 183 N.E.3d 1074, 1083 (Ind. 2022) (quotation omitted).

[43] A child victim's right to testify with a "comfort item" is governed by Indiana Code Section 35-40-5-13, which provides:

> When a child less than sixteen (16) years of age is summoned as a witness to any hearing in any criminal matter, including a preliminary hearing, a comfort item or comfort animal **shall** be allowed to remain in the courtroom with the child during the child's testimony unless the court finds that the defendant's constitutional right to a fair trial will be unduly prejudiced.

(Emphasis added).

[44] Only one appellate case has considered this statute, *Izaguirre v. State*, 194 N.E.3d 1224 (Ind. Ct. App. 2022), *trans. denied*. In *Izaguirre*, the defendant was charged with sex offenses against a child, and the child victim testified with a support dog sitting near her, to which the defendant objected. On appeal, we held that the defendant's challenge to the support dog was waived because the defendant failed to present a cogent argument. We further held that, waiver notwithstanding, the presence of the support dog did not unduly prejudice the defendant.

[45] Here, L.R. was fourteen years old at the time of the trial. The statute permits a child of L.R.'s age to testify with a comfort item, and the stuffed animal here

was neither inordinately large nor of an inappropriate character. Nothing in the statute limits its application to cases where the child is not the sole direct witness, and we are not persuaded that the stuffed animal here unfairly prejudiced Salinas. The trial court did not abuse its discretion by permitting L.R. to testify with the stuffed animal.

## IV. Refreshing Witness Memory—Forensic Interview

[46] Salinas argues that the trial court abused its discretion by failing to permit him to attempt to refresh Bushore-Berry's memory by showing her portions of the recorded forensic interview. When a witness is unable to recall information, Evidence Rule 612 authorizes a party to attempt to "refresh" the witness's memory using a "writing or object[.]" Evid. R. 612(a); *see also Thompson v. State*, 728 N.E.2d 155, 160 (Ind. 2000). The fact that a writing or object is used to refresh a witness's memory does not necessarily render the writing or object admissible; the evidence must be admissible in its own right under the Rules of Evidence. *See e.g.*, *Vialpando v. Johanns*, 619 F. Supp.2d 1107, 1123 (D. Colo. 2008) ("Using the guise of refreshing recollection to admit the contents of a document as substantive evidence . . . is improper, as it implicates the concerns underlying the hearsay rule.") (cleaned up).

[47] The trial court erred by refusing to permit Salinas to attempt to refresh Bushore-Berry's memory without moving to admit the recording of the interview. The trial court's error, however, was harmless. Salinas's purpose in questioning Bushore-Berry regarding the forensic interview was to point out that L.R. reported only one incident of oral sex during the forensic interview, yet L.R.

testified regarding several incidents of oral sex at trial. This evidence, however, would have been cumulative of Sheriff Liggett's testimony that, during the forensic interview, L.R. reported only one incident of oral sex.[8] *See In re A.L.*, 223 N.E.3d 1126, 1135 (Ind. Ct. App. 2023) (holding that trial court's error in failing to permit party to attempt to refresh witness's memory was not reversible error because testimony would have been cumulative of other evidence), *trans. denied*. L.R. testified that she did not recall the forensic interview but would be "surprised" if she reported that oral sex occurred only once. Tr. Vol. IV p. 148.

[48] Salinas directs us to other statements from L.R. during the forensic interview that he claims are "not cumulative of other evidence." Appellee's Br. p. 38. Having reviewed the forensic interview ourselves, it is clear that, in these statements, L.R. merely describes the single incident of oral sex mentioned in the interview.[9] Appellee's Br. p. 38. These statements, thus, have nothing to do with L.R.'s trial testimony regarding other incidents of oral sex and do not impeach her testimony.

---

[8] We note that Salinas was only charged with one count of child molesting as a Level 1 felony based on the oral sex. *See* Ind. Code § 35-31.5-2-221.5(1) (defining "other sexual conduct," which was the basis for Salinas' Level 1 felony child molesting conviction, as "an act involving . . . a sex organ of one (1) person and the mouth or anus of another person").

[9] Salinas cites L.R.'s statements from the interview that, during the incident of oral sex: (1) L.R. and Salinas "were sitting on a bed and silent" before the oral sex; (2) L.R.'s "clothes were on as normal"; (3) the incident "stopped when LR popped her head up and said stop"; (4) "LR never discussed Salinas ejaculating"; (5) L.R. was "able to get up and leave the room"; and (6) "LR never discussed Salinas striking her" during the incident. Appellant's Br. pp. 38-39.

[49]     In sum, we are not persuaded that the jury's verdict would have been any different even if Bushore-Berry's memory had been refreshed and she testified regarding L.R.'s statements from the forensic interview. The trial court's error was harmless.

## V. Jury Instruction

[50]     Lastly, Salinas argues that the trial court erred by refusing his tendered jury instruction.

> "The purpose of a jury instruction 'is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict.'" *Ramirez v. State*, 174 N.E.3d 181, 199 (Ind. 2021) (quoting *Dill v. State*, 741 N.E.2d 1230, 1232 (Ind. 2001)). We review a trial court's jury instructions for an abuse of discretion. *Isom v. State*, 31 N.E.3d 469, 484 (Ind. 2015). "An abuse of discretion arises when the instruction is erroneous and the instructions taken as a whole misstate the law or otherwise mislead the jury." *Id.* at 484-85. In reviewing a trial court's decision to give or refuse a tendered jury instruction, we consider: "(1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions which are given." *Guyton v. State*, 771 N.E.2d 1141, 1144 (Ind. 2002). "Jury instructions are to be considered as a whole and in reference to each other; error in a particular instruction will not result in reversal unless the entire jury charge misleads the jury as to the law in the case." *Pattison v. State*, 54 N.E.3d 361, 365 (Ind. 2016) (quoting *Whitney v. State*, 750 N.E.2d 342, 344 (Ind. 2001)).

*Albert v. State*, 193 N.E.3d 1040, 1042 (Ind. Ct. App. 2022), *trans. denied*.

Here, Salinas tendered Indiana Pattern Criminal Jury Instruction 12.1300, which provides:

> The credibility of a witness may be attacked by introducing evidence that on some former occasion the witness [made a statement] [made a written statement] [in former testimony testified] [acted in a manner] inconsistent with his testimony in this case. Evidence of this kind may be considered by you in deciding the value of the testimony of the witness.

Appellant's App. Vol. II p. 98. Salinas argued that the instruction was proper because the record included impeachment evidence, notably because Sheriff Liggett testified that L.R. reported only one incident of oral sex, whereas L.R. testified at trial regarding several such incidents. The trial court, however, refused the instruction.

We find instructive *Chambers v. State*, 734 N.E.2d 578 (Ind. 2000). In that case, the trial court refused an instruction that the jury could disregard testimony if the jury determined that the witness "willfully and intentionally testified falsely to any material fact in the case." *Id.* at 581. Our Supreme Court held that, although the instruction correctly stated the law and was supported by the evidence, the substance of the instruction was sufficiently covered by the trial court's other instructions. The other instructions sufficiently informed the jury that "it was the exclusive judge of witness credibility, and could disregard the testimony of a witness if it had reason to do so," and that the jury could use its "knowledge, experience, and common sense" in determining the weight of testimony. *Id.* The Court noted that "[c]ommon experience, shared by us all,

includes listening to a stranger and concluding that nothing he or she has to say is believable." *Id*.

[53] Here, as in *Chambers*, Salinas' proposed instruction is a correct statement of law and is supported by the evidence; however, the substance of the instruction was already covered by the trial court's other instructions. Specifically, Final Instruction No. 12 instructed the jurors that they were the "exclusive judges of the evidence," including "witness testimony"; that the jury could "determin[e] the value to give a witness's testimony"; and, that in doing so, the jury could consider the "reasonableness of the testimony considering the other evidence" and the jury's "knowledge, common sense, and life experiences." Appellant's App. Vol. II p. 114.

[54] Much like the instruction in *Chambers*, this instruction sufficiently informed the jury that it was free to determine the weight to give each item of testimony and that the jury could use its knowledge, common sense, and life experiences in doing so. This was sufficient to inform the jury that it could consider L.R.'s prior inconsistent statements in determining her credibility. The trial court, thus, did not abuse its discretion by denying Salinas' proposed instruction.

## Conclusion

[55] We conclude the following: (1) the trial court did not abuse its discretion by denying Salinas' request to depose L.R.; (2) the trial court abused its discretion by admitting evidence that DCS investigated a report that Salinas provided L.R. with marijuana and by admitting the text messages, but these errors were

harmless, and the trial court did not abuse its discretion by admitting Bushore-Berry's testimony regarding the percentage of children that lie about abuse; (3) the trial court did not abuse its discretion by permitting L.R. to testify while holding a stuffed animal; (4) the trial court erred by failing to permit Salinas to attempt to refresh Bushore-Berry's memory using the recorded forensic interview, but this error was harmless; and (5) the trial court did not abuse its discretion by refusing Salinas' proposed jury instruction. We affirm the judgment of the trial court.

[56] Affirmed.


Altice, C.J., and Brown, J., concur.


ATTORNEY FOR APPELLANT

Aaron J. Spolarich
Bennett Boehning & Clary, LLP
Lafayette, Indiana


ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Kelly A. Loy
Assistant Section Chief Criminal Appeals
Deputy Attorney General
Indianapolis, Indiana